STATE OF NEBRASKA, APPELLEE, V.
DAVID R. WACKER, APPELLANT.
688 N.W.2d 357

Filed November 5, 2004.    No. S-03-1196.

Bell Island, of Island, Huff & Nichols, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.
David R. Wacker appeals his conviction and sentence for manslaughter resulting from a motor vehicle accident. A police officer told Wacker that the county attorney would charge him with motor vehicle homicide instead of manslaughter if he admitted to driving the vehicle. He admitted to driving the vehicle, but the State reneged on the agreement. Wacker moved to compel the State to amend the charge to motor vehicle homicide in accordance with the agreement. The district court denied the motion to amend. We conclude that the officer, after speaking to the county attorney, entered into a cooperation agreement and that the State is bound by the agreement. Accordingly, we vacate Wacker's conviction and sentence and remand the cause for a new trial on the charge of motor vehicle homicide.

## BACKGROUND
On September 13, 2001, Wacker drank three or four beers while driving around with Nathan Curtis and another friend. Wacker, who was 19 at the time, was driving a pickup truck registered to him, and Curtis was in the passenger seat. Wacker later dropped the other friend off.

Later that night, Wacker called the 911 emergency dispatch center and stated that there had been a wreck and that he could not find Curtis. A member of the Hemingford Volunteer Fire Department responded to the emergency call, and he found Wacker lying on the porch at a trailer house and discovered Curtis dead in a ditch 20 feet east of Wacker's pickup truck.

Gordon Downing, a State Patrol officer, assisted in the accident investigation and testified that it became "apparent" and "obvious" that alcohol was involved and that Curtis had been thrown out of the passenger side of the truck. Two days later, Downing interviewed Wacker at the police department. Wacker admitted that he and Curtis had been drinking the night of the accident but denied that he was driving.

Almost 17 months later, on February 11, 2003, Downing obtained an arrest warrant for Wacker. In an interview on that date, Downing spoke to Wacker about the possible charges that could be filed. Downing's taped conversation with Wacker reveals that when he discussed the charges with Wacker, he immediately stressed that Wacker was initially charged with manslaughter instead of motor vehicle homicide. Downing then described the differences between manslaughter and motor vehicle homicide. He stressed that each was a different class of felony and that manslaughter required a minimum of 1 year in the state penitentiary, while motor vehicle homicide did not carry a minimum penalty. He stated that under motor vehicle homicide, "you get probation, you usually get 3 days in jail . . . whatever the judge decides." He stated that the county attorney chose to charge Wacker with manslaughter because it meant he would spend a year in "the pen."

Downing then told Wacker that according to the county attorney, "right now she's told me the ball's in your court." He also told Wacker that "she's willing to charge you with motor vehicle homicide, but you haven't been honest with us." He then repeated that "it's up to you, the ball's in your court [as to] what you're charged with." Downing then repeated the penalties for manslaughter and motor vehicle homicide. After some discussion about bond and whether Wacker wanted to talk to an attorney, the discussion returned to the difference in penalties and the ease of proving either manslaughter or motor vehicle homicide, with the emphasis

on how easy it would be to prove. Downing stated, "[M]anslaughter is going to be a slam dunk for us." Downing then stated:

I'm just telling you what you're looking at. I feel like that's about the fairest thing I can do, [be]cause I wouldn't want to be in your shoes, and if I was, I would want to know what I was looking at. [Be]cause certainly the county attorney could just charge you with manslaughter and say tough crap, [Wacker] can just deal with it, he gets a year in the pen—too bad, you know? But that's a year east, you know, even if you get sentenced to time for motor vehicle homicide, it's gonna probably going to be less than a year. If it's less than a year, you're gonna be in a lock [remainder of word unintelligible] in Box Butte County jail, and I certainly would rather be in Box Butte County jail than in the state pen for something like this. Because at least you're close to family; you can have visitors. If you're in Lincoln, uh, it's a long drive.

Downing then asked if Wacker wanted to talk, and Wacker stated that he would. Wacker admitted that he had been driving and stated that he had lied earlier because he was "scared shitless." He provided some details about the accident and how he was driving, and he addressed some of Downing's theories about how he had lost control of the vehicle. He also admitted that he had consumed three or four beers and confirmed that Curtis had not driven the vehicle the night of the accident. At the end of the conversation, Downing asked Wacker to repeat again that Wacker was the driver, and Downing said that he would call the county attorney and tell her that Wacker was the driver. At that point, after getting Wacker's confession, Downing started hedging his comments; he told Wacker that he did not want to pressure him because it was the county attorney's decision what to charge him with. Wacker repeated that he was the driver, and Downing then told him that he would tell the county attorney that Wacker had told the truth. Downing then stated that he did not know what the county attorney was going to do, but that he would tell her, and that she "told me she would go with a motor vehicle homicide charge." During the interview, Downing also discussed the previous county attorney, but the tape-recorded statement makes it clear that the earlier discussion about charges for motor vehicle

homicide was in reference to a discussion with the current county attorney. The words "plead guilty" were never brought up in the conversation between Downing and Wacker.

The information filed on March 7, 2003, charged Wacker with manslaughter instead of motor vehicle homicide. Before trial, he moved to compel the State to amend the charge, alleging that he entered into a cooperation agreement with the State under which he would be charged with motor vehicle homicide if he told the truth and that the State failed to honor the agreement. At a pretrial hearing on the motion to compel amendment to the charge, Downing testified that before obtaining the warrant, he discussed possible charges with the county attorney, who stated that if Wacker admitted everything, was honest, and pleaded guilty, she would offer felony motor vehicle homicide. But Downing did not correctly communicate that offer to Wacker.

The district court found that the State had offered a plea agreement and that Wacker had not pleaded to anything. Citing to *State v. Howe*, 2 Neb. App. 766, 514 N.W.2d 356 (1994), the court found that the State's offer was purely for a plea to a lesser charge. The court found, however, that Wacker's confession was made as the result of a plea offer and suppressed the statements. The jury found Wacker guilty, and the court sentenced him to an indeterminate term of 24 to 36 months. Wacker appeals.

## ASSIGNMENTS OF ERROR

Wacker assigns that the district court erred by (1) failing to require the State to amend the charge to motor vehicle homicide or dismiss the manslaughter charge; (2) overruling a motion to suppress seizure of his blood sample; (3) admitting expert testimony in the absence of a pretrial hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); (4) allowing Downing to give opinions about the cause of the accident, the vehicle's speed, and the driver's identity; (5) finding there was sufficient evidence to convict; (6) using his constitutional right to remain silent to enhance the sentence; and (7) imposing an excessive sentence.

## STANDARD OF REVIEW

When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent

conclusion irrespective of the decision made by the court below. *State v. Thomas, ante* p. 570, 685 N.W.2d 69 (2004).

## ANALYSIS

Wacker argues that he did not agree to a plea agreement. He contends that he entered into a cooperation agreement when Downing told him that the county attorney agreed—if Wacker told the truth—to charge him with motor vehicle homicide instead of manslaughter. He argues that a cooperation agreement differs from a plea agreement and that the State was bound by the terms. The State contends that there was no agreement and that even if there was, it was a plea agreement that Wacker breached because he never pleaded guilty.

In discussing plea and cooperation agreements, we have previously stated that we will " 'meticulously keep separate and apart the subjects of (1) the conferral of immunity, (2) a plea bargain, and (3) some other bargain involving something other than a plea to a criminal charge.' " *State v. Copple*, 224 Neb. 672, 687, 401 N.W.2d 141, 153 (1987), *abrogated on other grounds, State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990). We have also stressed that " '[t]he legal incidents are different. The procedural rules are different. Other than the very general notion of some *"quid pro quo,"* the three phenomena are distinct. We only do the law a disservice when we heedlessly blur those distinctions.' " *Id.*

■ Pure plea agreements " 'involve a suspect who has been apprehended for allegedly committing a crime and, rather than face the prospects of an extended trial and a punishment of undetermined severity if convicted, decides to plead guilty to charges mutually acceptable to him and the prosecutor.' " *State v. Howe*, 2 Neb. App. 766, 772, 514 N.W.2d 356, 361 (1994), quoting *United States v. Minnesota Min. & Mfg. Co.*, 551 F.2d 1106 (8th Cir. 1977). This differs from formal immunity, which is a creation of statute. See *id.*

■ But a cooperation agreement is neither a plea agreement nor a grant of immunity. Instead, a cooperation agreement arises when the State agrees to limit the prosecution in some manner in consideration for the defendant's cooperation. See *State v. Howe, supra.* The principle for enforcing a cooperation agreement arises under the Due Process Clause of the 14th Amendment. *State v.*

*Sturgill*, 121 N.C. App. 629, 469 S.E.2d 557 (1996). "Generally, 'fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected.'" (Emphasis omitted.) *Id.* at 635, 469 S.E.2d at 561.

In discussing fundamental fairness regarding enforcement of nonstatutory immunity, we have stated:

> "We believe that, as a matter of fair conduct, the government ought to be required to honor such an agreement when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government."

*State v. Copple*, 224 Neb. at 688, 401 N.W.2d at 153, quoting *Rowe v. Griffin*, 676 F.2d 524 (11th Cir. 1982). We then stated:

> "[T]he courts have developed a concept of 'nonstatutory' immunity whereby the courts will enforce informal or procedurally flawed grants of immunity on equitable grounds. . . . These cases indicate that where the government has entered into an agreement with a prospective defendant and the defendant has acted to his detriment or prejudice in reliance upon the agreement, 'as a matter of fair conduct, the government ought to be required to honor such an agreement.'"

*Id.*, quoting *United States v. Carpenter*, 611 F. Supp. 768 (N.D. Ga. 1985). We believe these principles also apply to cooperation agreements.

Applying these principles, the Nebraska Court of Appeals determined that "cooperation agreements are enforceable on equitable grounds if (1) the agreement was made; (2) the defendant has performed whatever the defendant promised to perform; and (3) in performing, the defendant acted to his or her detriment or prejudice." *State v. Howe*, 2 Neb. App. at 774, 514 N.W.2d at 362. We agree.

### WAS AGREEMENT MADE?

The State argues that either there was no agreement or if there was an agreement, it was a plea agreement. We disagree.

First, we determine that there was an agreement. In its brief, the State characterizes the tape as including only the following:

"Downing told Wacker that he was going to call the county attorney and tell her that he had finally been honest, and had admitted that he was driving, and that Downing couldn't say what she would do, because she was in charge of this thing." Brief for appellee at 19. The State then contends that "[a]t no time was there ever a promise made to Wacker that he would only be charged with motor vehicle homicide." *Id.* The State argues that Wacker's argument "has no basis in reality as reflected by [the taped confession]." *Id.* The State also indicates that Downing's statements referred to things said by the previous county attorney over a year in the past.

The State's description of the tape ignores the events leading up to Wacker's confession and mischaracterizes the taped confession. After discussing the differences between manslaughter and motor vehicle homicide, Downing told Wacker that according to the county attorney, "right now she's told me the ball's in your court." He told Wacker that "she's willing to charge you with motor vehicle homicide, but you haven't been honest with us." He then repeated that "it's up to you, the ball's in your court [as to] what you're charged with." The only reasonable construction of these statements is that Wacker controlled whether he would be charged with manslaughter or motor vehicle homicide. If he confessed, the charge would be motor vehicle homicide; if not, then the charge would be manslaughter.

Furthermore, the discussion was not about a plea. Although the record indicates that the county attorney intended Downing to offer a plea agreement; a plea is not what Downing offered. The words "plea or plead" are not mentioned in the tape. At no time did Downing tell Wacker that he would be required to plead guilty in exchange for his information. Instead, Downing stated that Wacker would be charged with motor vehicle homicide and talked about how the State could go about proving the crime at trial.

Having spoken with the county attorney, Downing had authority to enter into an agreement with Wacker. See *Butler v. State*, 55 Md. App. 409, 462 A.2d 1230 (1983). Further, courts have enforced cooperation agreements of nonprosecution or other concessions made by investigative agents without evidence that a U.S. Attorney or the Attorney General had delegated to them the authority to make such a promise. *State v. Sturgill*, 121 N.C. App.

629, 469 S.E.2d 557 (1996), citing *United States v. Carillo*, 709 F.2d 35 (9th Cir. 1983), and *United States v. Rodman*, 519 F.2d 1058 (1st Cir. 1975). See, also, *People v Gallego*, 143 Mich. App. 639, 372 N.W.2d 640 (1985). The preeminent consideration is not whether the police have the authority to make the promise, but whether the promise was in fact made. *State v. Sturgill, supra.*

We conclude that Downing entered into a cooperation agreement with Wacker and that Wacker performed by confessing that he had been driving the vehicle and by providing information about the accident, including information confirming that he had been drinking.

### DID WACKER ACT TO HIS DETRIMENT OR PREJUDICE AND WHAT IS REMEDY?

The State does not address whether Wacker acted to his detriment or prejudice when performing the agreement. The confession, however, was not used against Wacker at trial. Thus, the argument could be made that Wacker was not prejudiced by his statements or that suppression is the appropriate remedy for the State's breach. We disagree.

■ The test is whether "in performing, the defendant acted to his or her detriment or prejudice." *State v. Howe*, 2 Neb. App. 766, 774, 514 N.W.2d 356, 362 (1994). Providing self-incriminating information can constitute detrimental reliance. *Id.* See *State ex rel. Fortner v. Urbom*, 211 Neb. 309, 318 N.W.2d 286 (1982). Some courts have recognized suppression as a remedy or a manner in which to return the defendant to the status quo. See, *People v Gallego, supra*; *State v. Sturgill, supra*; *Com. v. Stipetich*, 539 Pa. 428, 652 A.2d 1294 (1995). Here, suppression would be an insufficient remedy for the State's breach.

■ Had Wacker known that the State's promise would not have been kept, it is unlikely he would have given up his constitutional right against self-incrimination. "When a promise is made by police to an individual, in exchange for a confession, the standards of substantive due process prohibit the State from 'welshing' on the bargain." *State v. Sturgill*, 121 N.C. App. at 645-46, 469 S.E.2d at 567. See, also, *Rowe v. Griffin*, 676 F.2d 524 (11th Cir. 1982). In the context of a plea agreement, it has been said that a defendant is entitled to specific performance when " 'no other

remedy is appropriate to effectuate the accused's legitimate expectation engendered by the governmental promise.'" *People v. Macrander*, 756 P.2d 356, 361 (Colo. 1988).

Here, Wacker reasonably expected that by providing information about the accident—particularly by admitting that he was driving the vehicle—that he would not be charged with manslaughter and instead would be charged with only motor vehicle homicide. In anticipating a motor vehicle homicide charge, Wacker detrimentally relied upon the promise by providing incriminating information. Suppression of the confession could not place Wacker back in a position that achieves his legitimate expectation.

Additionally, a confession affects whether a defendant will testify. Although Wacker's statement was suppressed, had he chosen to testify, he could have possibly been impeached with his confession. Thus, the confession, made in reliance on Downing's promise of a lesser charge, posed a risk for Wacker if he chose to testify at trial. Thus, the statement's suppression cannot put Wacker back in the status quo. Although we recognize that in some circumstances suppression might cure the effects of a broken cooperation agreement, here, we determine that it was insufficient.

We determine that suppression was not sufficient to negate Wacker's detrimental reliance on the State's promise and is not the appropriate remedy. The State made an agreement with Wacker promising that he would be charged with motor vehicle homicide in exchange for his confession. Wacker agreed and performed in reliance on the promise, and the State breached the agreement. Thus, the district court erred when it denied Wacker's motion to dismiss or to compel the State to amend the charge. To meet Wacker's expectation interest based on his reliance on the State's promise, we vacate the manslaughter conviction and sentence and remand the cause for a new trial at which Wacker cannot be charged again with manslaughter, but may be charged with motor vehicle homicide or a lesser offense. Because we remand the cause for a new trial, we do not address Wacker's remaining assignments of error.

CONVICTION AND SENTENCE VACATED, AND CAUSE REMANDED FOR A NEW TRIAL.