Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/05/2020 08:09 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
JONATHAN J. SIERRA, APPELLANT.

___ N.W.2d ___

Filed March 13, 2020.    No. S-19-180.

1. **Appeal and Error.** An appellate court may, at its option, notice plain error.

2. **Right to Counsel: Appeal and Error.** An appellate court reviews the trial court's decision on a motion to withdraw as counsel for an abuse of discretion.

3. **Pretrial Procedure: Appeal and Error.** Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion.

4. **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

6. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

7. **Constitutional Law: Double Jeopardy.** The protection granted by the Nebraska Constitution against double jeopardy is coextensive to the protection granted by the U.S. Constitution.

8. **Theft.** Where a theft involves items taken from multiple owners at the same time and in the same place, such theft constitutes a single offense.

9. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

10. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim.

11. ____: ____. Once issues of trial counsel's ineffective performance are properly raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.

12. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. This is because the trial record reviewed on appeal is generally devoted to issues of guilt or innocence and does not usually address issues of counsel's performance. The determining factor is whether the record is sufficient to adequately review the question.

13. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

14. **Effectiveness of Counsel: Proof.** To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

15. ____: ____. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

16. **Rules of Evidence: Words and Phrases.** In the context of Neb. Rev. Stat. § 27-403 (Reissue 2016), unfair prejudice means an undue tendency to suggest a decision based on an improper basis. Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis.

17. **Jury Instructions: Testimony: Appeal and Error.** A defendant is clearly entitled to a cautionary instruction on the weight and credibility to be given to the testimony of an alleged accomplice, and the failure to give such an instruction, when requested, is reversible error.

18. **Jury Instructions: Evidence: Witnesses: Testimony.** Whenever a judge decides that the evidence supports a conclusion that a witness is an accomplice and the defendant requests a cautionary instruction, the instruction is appropriate and should be given. This is because any alleged accomplice testimony should be examined more closely by the trier of fact for any possible motive that the accomplice might have to testify falsely.

19. **Effectiveness of Counsel: Rules of the Supreme Court: Trial: Records.** When recordation of parts of a trial is not made mandatory by the rules, the failure to require recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel.

Appeal from the District Court for York County: James C. Stecker, Judge. Affirmed in part, and in part vacated.

Lisa M. Meyer, of Fillman Law Offices, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. NATURE OF CASE

Jonathan J. Sierra was convicted of burglary, conspiracy to commit burglary, and several counts of theft involving a truck, a trailer, and several tools from a garage. Sierra's accomplice, Jonathan Mally, entered into a plea agreement with the State and testified against Sierra. The majority of Sierra's claims in this direct appeal are ineffective assistance of counsel claims. Sierra also claims that his court-appointed trial counsel had a personal conflict of interest because she was being investigated for and was charged with theft during her representation of Sierra. Finally, Sierra asserts that he was charged with separate theft charges in violation of the Double Jeopardy Clause of the U.S. Constitution.

## II. BACKGROUND

In December 2017, the State filed an eight-count complaint against Sierra alleging that Sierra was involved in the theft of a truck and trailer which he then used to assist in the theft of automotive tools from a mechanic's garage in York, Nebraska. The complaint was based on an incident which occurred in the early morning of October 15, 2017, when a window of Extreme Automotive in York was broken and tools were stolen from the premises. The tools belonged, separately, to a co-owner of the garage business and his two employees. The co-owner, Andrew Wilkinson, notified the officer investigating the break-in, Sgt. Michael Hanke, that his checkbook and debit card had also been stolen.

Sierra was charged with eight counts: (1) burglary; (2) conspiracy to commit burglary; (3) three counts of theft by unlawful taking ($5,000 or more), which were related to the tools taken; (4) theft by unlawful taking ($5,000 or more) for stealing the truck; (5) theft by unlawful taking (less than $1,500 to $5,000) for stealing the trailer; and (6) criminal mischief (less than $500).

Upon Sierra's request, the court appointed an attorney to represent him in this matter. During preparation for trial, Sierra became frustrated with the lack of action on his attorney's part and requested that she withdraw. Sierra's attorney moved to withdraw. At the hearing on the motion, Sierra's attorney indicated that there was a breakdown of the attorney-client relationship. Sierra told the judge that he had stopped speaking with his attorney and that he tried to have his fiance and mother talk with his attorney in his stead. Sierra claims that he spoke with his attorney only twice prior to the hearing. The court denied the motion.

The court adopted the parties' reciprocal discovery agreement and set a deadline of March 5, 2018, or "as soon as it becomes reasonably discovered, but not less than ten days before trial." Approximately 4 months after the reciprocal discovery deadlines and 5 days before trial, Sierra's attorney

filed, for the first time, a witness list identifying five witnesses that the defense intended to call. The State responded by filing a motion in limine to preclude undisclosed witnesses, alibi defense, and undisclosed exhibits. In the alternative, the State asked for a 30-day continuance.

At the hearing to consider the motion, the State pointed out that Sierra had failed to comply with the deadline for reciprocal discovery and the 30-day deadline for notice of alibi defense and had filed the witness list less than 10 days before trial.

Sierra's attorney responded that all of the witnesses were known to the State from its reports and that one witness was on the State's list, but Sierra's attorney did not provide any reason for not complying with the reciprocal discovery order. Similarly, Sierra's attorney also did not provide a reason for failing to comply with the statutory notice requirements for an alibi defense. Rather, she asked the judge to waive the notice requirement in the interest of justice. The district court sustained the State's motion in limine. As a result, Sierra was able to call only one of the five listed witnesses and was precluded from pursuing his alibi defense.

At trial, Hanke's testimony provided a general timeline of the investigation. Hanke testified that after Wilkinson called the York police about the break-in, police reviewed surveillance videos taken from businesses in the area. The videos revealed that two individuals stole a truck from the garage parking lot and then drove to a nearby pizza restaurant, where they stole a trailer before returning to the garage. Thirty minutes later, the truck and trailer left the garage.

Wilkinson's bank notified him on October 15, 2017, that someone had attempted to use the stolen debit card at a Walmart store in Norfolk, Nebraska. Wilkinson notified law enforcement of the bank's report. Hanke used that information to get pictures taken from the Norfolk Walmart's security cameras, which depicted two individuals using the stolen debit card. Hanke testified that, based on information received from the Butler County Sheriff's Department, the investigators

eventually identified both of the individuals in the photographs as Mally and Sierra.

A Walmart store in York provided photographs of two individuals to law enforcement, after the individuals were suspected of shoplifting on the morning of October 15, 2017. Maggie Wolfe, an asset protection associate for the York Walmart, and Hanke presented identification testimony related to the photographs taken from the Walmarts in York and Norfolk. Wolfe provided the authentication for exhibit 1, a collection of photographs taken from the York Walmart on the morning of the burglary. During direct examination, Wolfe positively identified Sierra as being depicted in the photographs taken from the York Walmart. On cross-examination, Wolfe admitted that her identification of Sierra came after she read about the investigation in the newspaper.

Hanke testified that a cell phone traceable to Sierra "pinged off [of]" a cell tower in York around the time that Mally's testimony placed them both in York. Hanke testified that cell phone records placed Sierra's cell phone within 20 miles of York on the day of the burglary. Sierra's attorney did not object to Hanke's testimony about the content of the cell phone records, and the records themselves are not in evidence.

Evidence recovered from the search of Sierra's home was admitted based on the testimony provided by Hanke. According to Hanke's testimony at trial, based on the Butler County, Nebraska, sheriff's identification of Sierra in the photographs taken from the York Walmart and pursuant to a clause in Sierra's probation order, police searched Sierra's residence, where they found a majority of the tools taken from Extreme Automotive. The sheriff who identified Sierra in the photographs did not testify at trial. The law enforcement officers who conducted the search did not testify at trial, and the probation order is not in the record.

Hanke testified that the stolen truck was recovered after being abandoned on the road north of the York Walmart. The stolen trailer was recovered after being abandoned on the road

near Genoa, Nebraska. Sierra's attorney made no objections to these portions of Hanke's testimony. Hanke testified that during his first interview of Sierra, Sierra claimed he had never been to York, denied all involvement in the burglary, and said that he possessed the tools because he had purchased them from Mally.

Sierra's attorney cross-examined Hanke about the story Sierra gave to the York police as to how the tools ended up in his possession. Hanke testified that during his first interview, Sierra denied ever being in York, and that Sierra claimed he had purchased the tools. Hanke testified that during a second interview with Sierra, Sierra admitted to being in York. Sierra's attorney did not object to Hanke's testimony regarding either interview.

Mally was arrested in Columbus, Nebraska, for an unrelated incident. A search revealed that Mally had on his person and in his vehicle several of the tools and financial items taken from Extreme Automotive. A warrant was executed for Mally's residence, where several more items from Extreme Automotive were found. Mally subsequently entered into a plea agreement with the State and testified against Sierra.

Mally testified as Sierra's accomplice and provided a general timeline for the events on October 15, 2017, similar to that set forth by Hanke. Mally testified that he helped Sierra commit the burglary and theft at Extreme Automotive because Sierra needed mechanics tools. Mally asserted that the various pictures taken at both Walmart locations accurately depicted Sierra and him at those locations. Mally also testified that he was receiving benefits from the State concerning various charges in exchange for his cooperation.

Evidence concerning the value of the tools was presented through various sources at trial. Several of the exhibits entered into evidence by the State display tools that were recovered from the search of Mally's residence. During the presentation of evidence recovered from Mally's residence, Sierra's attorney made several objections, some of which were sustained. There

was also evidence of financial items, including checkbooks and a debit card, that were recovered in Mally's possession and testimony by Mally that Sierra attempted to use the stolen debit card to buy items. Mally denied the existence of any arrangement with Sierra to buy the tools.

Sierra's attorney elected to forgo the creation of a record of the voir dire, closing arguments, and jury instructions. The jury instructions that were given are preserved in the transcript. A jury found Sierra guilty on all counts except the charge of criminal mischief.

At some point after the trial, Sierra's attorney was charged with theft by unlawful taking ($5,000 or more) in an unrelated case. Sierra requested new counsel, and the request was granted before sentencing. Sierra was sentenced to 16 to 20 years' imprisonment on each of the Class IIA felonies and 1 to 2 years' imprisonment on the Class IV felony, with orders for the sentences to run concurrently. Sierra appeals.

## III. ASSIGNMENTS OF ERROR

Three errors Sierra assigns, which are not ineffective assistance of counsel claims, assert that the court erred by (1) denying Sierra's attorney's motion to withdraw, (2) granting the State's motion in limine, and (3) sentencing Sierra on multiple charges of theft by unlawful taking, in violation of the Double Jeopardy Clause of the U.S. Constitution.

Sierra also assigns 14 ineffective assistance of counsel claims. Sierra first asserts that his attorney was "per se ineffective" for failing "to maintain her law license and appropriate moral standing." In his argument, Sierra elaborates that his attorney had a personal conflict of interest such that she failed to act in Sierra's best interests because her focus was torn between her own pending legal actions and representing Sierra.

Sierra also assigns that his attorney was deficient by failing to (1) comply with discovery; (2) serve notice of Sierra's alibi; (3) move for a continuance at the hearing on the motion

in limine; (4) call Sierra's fiance as a witness for the defense; (5) depose Sierra's brother, mother, and fiance, as well as two potential alibi witnesses, prior to trial; (6) communicate with Sierra to prepare for trial; (7) assert a double jeopardy claim; (8) move to suppress identification evidence and evidence found from the search of Sierra's home; (9) file a motion in limine to exclude evidence discovered at Mally's home; (10) object to identification evidence during trial; (11) object to "proffer interview" statements admitted in evidence during trial; (12) maintain a sufficient record; and (13) request a jury instruction on accomplice testimony.

## IV. STANDARD OF REVIEW

[1] An appellate court may, at its option, notice plain error.[1]

[2] We review the trial court's decision on a motion to withdraw as counsel for an abuse of discretion.[2]

[3] Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion.[3]

[4] The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[4]

[5] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[5] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[6] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test

---

[1] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[2] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

[3] *State v. Hatfield*, 304 Neb. 66, 933 N.W.2d 78 (2019).

[4] *In re Application No. OP-0003*, 303 Neb. 872, 932 N.W.2d 653 (2019).

[5] *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019).

[6] *Id.*

articulated in *Strickland v. Washington*,[7] an appellate court reviews such legal determinations independently of the lower court's decision.[8]

[6] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[9]

## V. ANALYSIS

### 1. DOUBLE JEOPARDY

[7] We first address Sierra's claim that he was charged with three counts of theft related to the tools taken from Extreme Automotive, in violation of the Double Jeopardy Clauses of the Nebraska and U.S. Constitutions. The protection granted by the Nebraska Constitution against double jeopardy is coextensive to the protection granted by the U.S. Constitution.[10] Both clauses are designed to protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[11]

[8] Though we have never been presented with a situation where the multiple items belonged to multiple people, we have held that an act of theft involving multiple items of property stolen simultaneously at the same place constitutes one offense, in which the value of the individual stolen items may be considered collectively for the aggregate or total value of the property stolen to determine the grade of the theft offense under

---

[7] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[8] *State v. Chairez, supra* note 5.

[9] *Id.*

[10] See *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007).

[11] See *State v. Winkler*, 266 Neb. 155, 663 N.W.2d 102 (2003).

Neb. Rev. Stat. § 28-518 (Reissue 2016).[12] Moreover, the criminal code forbids the amounts taken pursuant to one scheme or course of conduct from being aggregated into more than one offense.[13] This principle of considering theft of multiple items as one offense has been applied by a majority of jurisdictions, even when the property taken has more than one owner.[14] And we likewise hold that where a theft involves items taken from multiple owners at the same time and in the same place, such theft constitutes a single offense.

Where the defendant is charged with and punished for multiple offenses based on each stolen item taken simultaneously from the same place, the defendant is subjected to multiple punishments for the same offense, in violation of the prohibition against double jeopardy.[15] The State concedes that Sierra was improperly charged, convicted, and punished in violation of the Double Jeopardy Clauses of the Nebraska and U.S. Constitutions. We accordingly find that charging and convicting Sierra with three separate offenses for theft by unlawful taking ($5,000 or more), each a Class IIA felony, violated the Double Jeopardy Clauses of the Nebraska and U.S. Constitutions and constituted plain error.

[9] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[16] Allowing three convictions for the same offense is a clear violation of both the Nebraska and

---

[12] See *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992).

[13] § 28-518(7).

[14] See, *State v. White*, 348 Md. 179, 702 A.2d 1263 (1997); *People v. Dist. Ct.*, 192 Colo. 355, 559 P.2d 1106 (1977). See, also, Annot., 37 A.L.R.3d 1407 (1971).

[15] See *State v. Miner, supra* note 10.

[16] *Mays v. Midnite Dreams, supra* note 1.

U.S. Constitutions. Left uncorrected, this error would be a violation of Sierra's fundamental rights and damage the integrity of the judicial process.[17] The appropriate remedy for this plain error is to vacate two of the three convictions and sentences for theft by unlawful taking ($5,000 or more) that are based on the theft of the tools from Extreme Automotive.[18]

### 2. Exclusion of Witnesses

We next address Sierra's assignments of error concerning the court's exclusion of defense witnesses who were not disclosed by his attorney until 5 days before trial. Sierra asserts that these witnesses would have provided alibi testimony and information attacking the credibility of Mally.

### (a) State's Motion in Limine

We find no merit to Sierra's contention that the district court erred by granting the State's motion in limine to exclude late-disclosed defense witnesses.

A discovery stipulation was agreed to on February 12, 2018, which designated a deadline to provide all discovery information by March 5 or "as soon as it becomes reasonably discovered, but not less than ten days before trial." At the hearing on the motion in limine, Sierra's attorney's only stated reason for not complying with the order was that the individuals the defense intended to call were named in the State's reports and one was also included in the witness list attached to the State's information filed in this matter.

Neb. Rev. Stat. § 29-1912 (Reissue 2016) describes the types of information that are discoverable. Neb. Rev. Stat. § 29-1916 (Reissue 2016) provides the court discretion to grant reciprocal discovery. Neb. Rev. Stat. § 29-1919 (Reissue 2016) specifies that when a party has failed to comply with

---

[17] See *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

[18] See *State v. Miner, supra* note 10. See, also, *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996).

the discovery statutes, the court may (1) order such party to permit the discovery or inspection of materials not previously disclosed, (2) grant a continuance, (3) prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or (4) enter such other order as it deems just under the circumstances. In the present case, the court prohibited Sierra from calling a witness or introducing evidence that had not been disclosed pursuant to the court's discovery order.

Nevertheless, Sierra argues that our holding in *State v. Woods*[19] relieved him of the burden to disclose witnesses because he did not request a witness list from the State. In *Woods*, we held that Neb. Rev. Stat. § 29-1927 (Reissue 2016) does not require disclosure of alibi witnesses and that § 29-1916 (reciprocal discovery) applies only when the defendant requests "'comparable items or information'" from the State.[20] However, the situation in *Woods* differs from the present case in two important ways.

First, in *Woods*, the State waived the notice requirement for an alibi defense and so the issue on appeal was whether § 29-1919 required the filing of a witness list. Here, the State did not waive notice and filed a motion in limine to keep the alibi defense evidence from being admitted.

Second, all of the witnesses in *Woods* were to be used to present alibi information. Sierra concedes that at least two of the witnesses excluded by the State's motion in limine were intended to offer evidence impeaching Mally's testimony and not an alibi defense.

Thus, our holding in *Woods* does not shield Sierra from the trial court's sanctions for failing to file a witness list. The court considered Sierra's attorney's failure to comply with the discovery order and applied an authorized remedy under § 29-1919.

---

[19] See *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

[20] See *id.* at 767, 587 N.W.2d at 130 (quoting § 29-1916).

We likewise find no merit to Sierra's alternative argument that the use of the definite article in § 29-1919(3), giving the trial court discretion to prohibit a party from calling "a witness," limits the court's remedy to excluding only one undisclosed witness. Sierra's reading of § 29-1919 disregards our rules for construction and the interchangeability of singular and plural words. Neb. Rev. Stat. § 49-802 (Reissue 2010) specifies as follows:

> Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter enacted shall be as follows:
>
> . . . .
>
> (6) Singular words may extend and be applied to several persons or things as well as to one person or thing.
>
> (7) Plural words may extend and be applied to one person or thing as well as to several persons or things.

Under the plain meaning of § 29-1919, if a party fails to comply with discovery and give notice of an intent to call a witness, the court may prohibit that witness from being called. Nothing in § 29-1919 suggests that the remedy cannot be extended to prohibiting multiple witnesses.

Lastly, Sierra contends that the court's order granting the State's motion in limine violated his constitutional right under the Sixth Amendment to have process to compel the attendance of witnesses on his behalf. The U.S. Supreme Court has established that the Sixth Amendment does not provide an absolute right to call witnesses; rather, the defendant's right is weighed against the concerns of the state to have a fair and efficient administration of justice.[21] We have considered the same concerns when determining whether other discovery sanctions violate the Nebraska Constitution.[22] Sierra does not have an

---

[21] *Taylor v. Illinois*, 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

[22] See, *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014); *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016).

absolute right to present witnesses and evidence. The State's interest in protecting itself against an 11th-hour defense is merely one component of the broader public interest in a full and truthful disclosure of critical facts.[23]

We find that the trial court did not abuse its discretion in granting the State's motion in limine. Further, we conclude that the court's ruling granting the State's motion in limine did not violate Sierra's constitutional rights under the Sixth Amendment.

### (b) Failure to Depose Witnesses, File Witness List, and Serve Notice of Alibi

[10] In the alternative to Sierra's challenge to the court's ruling granting the State's motion in limine, Sierra asserts that his attorney's ineffective assistance of counsel led to that ruling. Sierra has new counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim.[24]

[11-13] Once such issues are properly raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.[25] We have said that the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved.[26] This is because the trial record reviewed on appeal is generally """"devoted to issues of guilt or innocence"""" and does not usually address issues of counsel's performance.[27] The determining factor is whether the record is

---

[23] See *Taylor v. Illinois, supra* note 21.

[24] *State v. Chairez, supra* note 5.

[25] *Id.*

[26] *Id.*

[27] *Id.* at 736, 924 N.W.2d at 730.

sufficient to adequately review the question.[28] An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[29]

[14,15] To show deficient performance, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[30] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[31]

We cannot determine on the appellate record whether the witnesses the court prohibited from testifying would have in fact supported Sierra's alibi defense and impeached Mally's testimony. Without such information, we can determine neither deficiency nor prejudice. We find that the record is insufficient for us to address this claim on direct appeal.

Sierra argues that his attorney's "agreement" not to call his fiance was an additional act of ineffective assistance of counsel, separate from her failure to timely disclose defense witnesses.[32] We find it indistinguishable from the claim of ineffective assistance based on the failure to comply with the reciprocal discovery order. Based on the record, it appears Sierra's attorney's comments that Sierra characterizes as an "agreement" were merely a concession of the facts that the name of Sierra's fiance did not appear in the State's reports and that his attorney's failure to file a separate witness list had precluded her from calling his fiance as a witness. Such comments were mere observations of undisputed facts and cannot constitute deficient performance. If the deficient performance occurred, it was in the failure to timely file the witness list, not the acknowledgment of the result of doing so.

---

[28] *State v. Chairez, supra* note 5.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] Brief for appellant at 35.

### (c) Failure to Request Continuance
### at Hearing on State's
### Motion in Limine

We find no merit to Sierra's assertion that his attorney was ineffective for failing to request a continuance at the hearing on the State's motion in limine. During the course of the hearing, the State had already raised the possibility of a continuance, as § 29-1919 lists a continuance as a possible remedy for an untimely witness list. The trial court was fully informed of the option to order a continuance and declined to do so. Sierra's attorney was not deficient for failing to bring an optional remedy to the court's attention that had already been raised moments earlier by the State.

### 3. LACK OF COMMUNICATION WITH
### SIERRA'S ATTORNEY

We turn next to Sierra's assertions relating to his attorney's more generalized failure to communicate with Sierra while preparing for trial.

### (a) Motion to Withdraw

First, we find no merit to Sierra's assertion that the district court abused its discretion in denying his attorney's motion to withdraw. Appointed counsel must remain with an indigent accused unless one of the following occurs: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent; or (3) the accused chooses to retain private counsel.[33] We review the trial court's decision on a motion to withdraw as counsel for an abuse of discretion.[34]

Sierra argues that the district court had an obligation to make a thorough inquiry concerning his attorney's lack of preparation for the trial and that the court would have realized, through further inquiry, that trial counsel was incompetent.

[33] *State v. McGuire, supra* note 2.

[34] *Id.*

However, the record indicates that the court investigated and addressed all of the specific examples of incompetency alleged by Sierra at the time of the hearing. At the hearing on the motion to withdraw, Sierra's attorney indicated that the reason for the motion was a breakdown of the attorney-client relationship. Sierra indicated at the hearing that he had stopped speaking with his attorney and had tried to have his fiance and mother talk with her instead. Sierra's attorney explained that she did not respond to calls by Sierra's fiance and mother, because doing so would violate attorney-client privilege.

The court heard each of Sierra's complaints and determined they did not warrant the withdrawal of counsel. The facts demonstrated at the hearing do not indicate the district court abused its discretion in concluding that under the evidence presented, Sierra's attorney was representing Sierra competently. Therefore, we find no merit to Sierra's assignment that the trial court erred in overruling his attorney's motion to withdraw.

### (b) Ineffective Assistance

Relatedly, Sierra raises on direct appeal that the breakdown in communication with his attorney constituted ineffective assistance of counsel. Sierra asserts that he met with his attorney only twice before trial. Sierra claims he provided his attorney with information and names of potential witnesses at the first meeting. Sierra contends that at the second meeting, she took a personal call and then was in a hurry to leave. Sierra describes that he had more information that he was attempting to provide his attorney concerning his defense and that she did not consider that information because she was distracted during their second meeting. We find that the record is insufficient for us to address this claim on direct appeal. The nature and extent of meetings in preparation for trial between Sierra and his attorney are not in the record.

### 4. Evidence of Tools Found in Sierra's
### and Mally's Possession

We next address Sierra's claims that various acts of deficient conduct by his attorney led to the admission at trial of prejudicial evidence of his and Mally's possession of the stolen tools.

#### (a) Failure to Move to Suppress Search
#### of Sierra's Residence

Sierra first argues that his attorney was ineffective by failing to move to suppress all of the evidence obtained from the search of Sierra's residence, on the ground that he did not consent to the search. The record indicates that Sierra's home was searched without a warrant pursuant to a clause in his probation order. We have held that certain probation orders may contain conditions authorizing warrantless searches under specific circumstances when such orders comply with constitutional requirements and contribute to the rehabilitation of the offender.[35] Because the probation order and evidence of Sierra's consent to the order are not in the record, we cannot determine whether failure to file the motion to suppress was deficient or prejudicial. We find that the record is insufficient for us to address this claim on direct appeal.

#### (b) Failure to Move to Suppress Tools
#### Found in Mally's Possession
#### as Unfairly Prejudicial

Second, Sierra argues that evidence related to tools found in Mally's possession was inadmissible under Neb. Rev. Stat. § 27-403 (Reissue 2016) and that his attorney was ineffective in failing to object to the evidence on this ground. Sierra provides a specific list of exhibits and portions of testimony which reflect the fact that stolen tools were found in Mally's possession and which Sierra asserts his attorney should have

---

[35] See, *U.S. v. Brown*, 346 F.3d 808 (8th Cir. 2003); *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980).

objected to as unfairly prejudicial under § 27-403. Sierra concedes that she objected to several of the exhibits in question as lacking foundation or as irrelevant under Neb. Rev. Stat. § 27-402 (Reissue 2016). In fact, the court sustained some of her objections to similar evidence.

[16] To show prejudice under *Strickland*, it must be shown that a motion under § 27-403 should have resulted in the evidence in question's being ruled inadmissible and that, without such evidence, there is a reasonable probability of a different outcome in the trial.[36] In the context of § 27-403, unfair prejudice means an undue tendency to suggest a decision based on an improper basis.[37] Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis.[38]

When the State is prosecuting an individual for conspiracy to commit burglary, items found in the possession of a coconspirator are undoubtedly relevant to the crime charged. In fact, Sierra does not challenge on appeal the fact that the district court overruled his attorney's relevancy objections to the evidence.

Sierra makes the conclusory statement that admitting evidence of the tools found in Mally's possession made it more difficult for the jury to weigh Sierra's defense, but Sierra fails to articulate how this evidence could lead a jury to convict Sierra for an incorrect reason. Sierra's defense was that he did not take part in the burglary, but bought the tools found in his possession from Mally. The fact that Mally had stolen tools in his home, which Sierra did not "purchase," is not inconsistent with this defense. It is not deficient conduct to fail to object on grounds that are likely to properly be overruled.

---

[36] See, *Strickland v. Washington, supra* note 7; *State v. Chairez, supra* note 5.

[37] *State v. Hernandez*, 299 Neb. 896, 911 N.W.2d 524 (2018).

[38] *Id.*

We find no merit to Sierra's contention that his attorney was ineffective for failing to object on § 27-403 grounds to evidence that stolen tools were found in Mally's possession.

### 5. Failure to Object to Identification Evidence

Sierra asserts that his attorney was also ineffective by failing to make the appropriate motions or objections concerning several pieces of identification evidence adduced during the testimony of Wolfe and Hanke. Sierra contends that his attorney was ineffective by failing to make hearsay, foundation, and Confrontation Clause objections, presumably to each part of the testimony and each exhibit specified.

We find that Sierra has failed to sufficiently assign and argue any claim related to his attorney's failure to object on Confrontation Clause grounds. The protections afforded by the Confrontation Clauses of the Nebraska and U.S. Constitutions overlap with the purposes and policies of the rules on hearsay. The Nebraska Evidence Rules provide that hearsay is generally inadmissible except as provided by these rules, by other rules adopted by the statutes of the State, or by the discovery rules of the Nebraska Supreme Court.[39] Where testimonial statements are at issue, the Confrontation Clause and the Nebraska Constitution demand that hearsay statements be admitted at trial only if the declarant is unavailable and there has been a prior opportunity for cross-examination; if the statements are nontestimonial, then no further Confrontation Clause analysis is required.[40]

While Sierra provides annotations to several large swaths of Wolfe's and Hanke's testimony, he fails to describe with any specificity even a single statement by either Wolfe or Hanke that he alleges to be testimonial. We will not scour the record to determine which portions of their testimony, or what portion

---

[39] Neb. Rev. Stat. § 27-802 (Reissue 2016). See, also, Neb. Rev. Stat. §§ 27-801 through 27-806 (Reissue 2016).

[40] See *State v. Sorensen*, 283 Neb. 932, 814 N.W.2d 371 (2012).

of the exhibits annotated to, Sierra contends were objectionable on Confrontation Clause grounds.

We find that Sierra has failed to sufficiently argue his attorney's deficient conduct as to the alleged failure to make Confrontation Clause objections.[41] An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[42] A claim insufficiently stated is no different than a claim not stated at all.[43]

(a) Photographic Exhibits and
Identification Statements

We next consider Sierra's contention that his attorney should have raised both foundation and hearsay objections to portions of Wolfe's and Hanke's testimony identifying Sierra and Mally as the individuals depicted in the photographs contained in exhibits 1 and 23. Exhibit 1 consists of photographs provided by Wolfe to law enforcement after Mally was suspected of shoplifting from the York Walmart. During Wolfe's testimony, the State authenticated, picture by picture, each photograph contained in exhibit 1. Exhibit 1 was received into evidence after the court overruled Sierra's attorney's foundation objection. Exhibit 23 was entered into evidence based on the testimony provided by Mally. Sierra does not assign error to the admission of exhibits 1 and 23.

The photographs in exhibit 1 depict a person exiting the York Walmart with Mally and then that person and Mally getting into separate vehicles in the parking lot. Wolfe identified

---

[41] See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

[42] *Id.*

[43] *Id.*

the second individual as Sierra. Sierra argues that his attorney was ineffective for failing to move to strike Wolfe's identification of Sierra after evidence was adduced on cross-examination that Wolfe identified Sierra based on reading his name in the newspaper after the incident. We do not have sufficient evidence on the record to determine deficiency or prejudice. We find that the record is insufficient to determine this claim on direct appeal.

Similarly, we find the record is insufficient to determine Sierra's assertion that his attorney was ineffective for failing to object on foundation and hearsay grounds to Hanke's identification of Sierra in the photographs contained in exhibits 1 and 23. Hanke admitted that he did not personally identify Sierra as the second person depicted in the photographs. Rather, Hanke testified that he received information from the Butler County sheriff identifying the second person in the photographs in exhibit 1 as Sierra. Hanke also testified that the photographs taken from the Norfolk Walmart, exhibit 23, depicted Sierra and Mally.

Although Hanke lacked personal knowledge and his statement relaying information from the Butler County sheriff was inadmissible hearsay,[44] we do not have information in the record concerning Sierra's attorney's trial strategy. Furthermore, we do not know what theories of prejudice Sierra is alleging relating to this claim because an appellant is only required to allege deficient conduct on direct appeal.[45] Accordingly, we find the record is insufficient to resolve this claim on direct appeal.

### (b) Testimony About Search of Sierra's Residence, Location of Trailer, and Cell Phone Records

Sierra asserts that his attorney missed objections to three other portions of Hanke's testimony on foundation and hearsay

[44] See §§ 27-801 and 27-803(23).

[45] See, *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014); *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

grounds. Sierra contends that had she made the proper objections, the court would have sustained the objections, which would have prevented the admission of several pieces of prejudicial evidence, unless the State called the proper witnesses to adduce the evidence. Sierra identifies the testimony at issue as statements about the location of the recovered trailer, testimony related to the search of his residence, and cell phone location data retrieved from a search warrant. Sierra argues that assuming the State would not have called additional witnesses to present such evidence, if Sierra's attorney had made objections that would have been sustained, there would have been a void in the circumstantial evidence significant enough to raise a reasonable doubt as to whether he committed the crimes charged.

### (i) Trailer

Hanke testified as to the location of the trailer without specifying who recovered the trailer and whether he had personal knowledge of its recovery. We cannot determine whether either a hearsay or a foundation objection would have had merit without knowing whether Hanke had personal knowledge of the trailer's recovery. That information is not in the trial record. Without being able to determine whether either objection had merit, we cannot determine on direct appeal whether Sierra's attorney's failure to object was deficient and whether Sierra was prejudiced by deficient conduct. Thus, we find the record is insufficient to resolve this claim on direct appeal.

### (ii) Tools Found in Sierra's Residence

Evidence of the physical tools and photographs of tools recovered from Sierra's residence were admitted based upon Hanke's testimony despite the fact that Hanke did not take part in the search of Sierra's residence. Sierra argues that his attorney was ineffective for failing to object on foundation and hearsay grounds to this evidence, found in exhibits 3 and 14. However, she objected to the admission of exhibit 3.

Exhibit 3 was a series of photographs of items taken from Extreme Automotive and recovered during the search of Sierra's residence. Sierra's attorney objected to exhibit 3 on foundation and, after a clarification from the State, made a second objection on relevancy that was overruled. Sierra does not assign error to the trial court's rulings on any of these objections. Sierra's attorney did not object to exhibit 14. The record does not reveal any grounds that would have warranted an objection to exhibit 14. The record demonstrates Sierra's attorney repeatedly made the appropriate hearsay and foundation objections to the evidence at issue. Thus, we find no deficient conduct by her related to Hanke's testimony about items recovered from the search of Sierra's residence.

### (iii) Cell Phone Records

Hanke was the sole source for the content of the cell phone records. Hanke testified that he obtained a search warrant for the records and that those records indicated Sierra was in York on October 15, 2017. Neither the warrant nor the records are in evidence, and no cell phone company represetnative testified as to the authenticity of the records provided. Sierra's attorney made no objections to this testimony, and Sierra asserts that this constituted ineffective assistance of counsel.

Hanke's testimony about the contents of the cell phone records very well may have violated evidence rules for foundation and hearsay.[46] Although Sierra's attorney's failure to object on these grounds may qualify as deficient conduct, we cannot make that determination without information about her trial strategy, which is not contained in the appellate record. Moreover, we decline to speculate on direct appeal about whether the State would have called additional witnesses to authenticate the records if she had made the objections and they had been sustained. Thus, we find the record is insufficient to resolve this claim on direct appeal.

---

[46] See § 27-802 and Neb. Rev. Stat. § 27-901 (Reissue 2016).

## 6. Failure to Object to "Proffer Interview" Evidence

Sierra contends that his attorney was also ineffective for failing to object to Hanke's testimony about Sierra's statements made during a "proffer interview." Hanke testified to a second interview that occurred with Sierra where Sierra admitted to being in York. No information appears in the record about the nature of this second interview. The term "proffer interview" is one way of describing interviews that occur in order to arrive at a negotiated plea in exchange for a defendant's cooperation; this is also referred to as "plea negotiations"[47] or, in federal cases, as "'cooperation-immunity agreements.'"[48]

Typically, "proffer interviews" involve some sort of agreement. The interpretation of such an agreement is governed by general contract principles, and an alleged violation by the State of the agreement implicates the due process rights of the defendant.[49] The record does not contain any information about any alleged agreements between the State and Sierra prior to the interview. Thus, the record is insufficient to determine this claim on direct appeal.

## 7. Failure to Request Accomplice Jury Instruction

Having addressed all of Sierra's arguments concerning the evidence adduced at trial, we now turn to the jury instructions. Sierra argues his attorney was ineffective because she failed to request a cautionary jury instruction on accomplice testimony. Sierra claims that she should have requested an instruction, patterned from NJI2d Crim 5.6, which would have read:

> "There has been testimony from . . . Mally, a claimed accomplice of [Sierra]. You should closely examine his

---

[47] See *State v. McGee*, 282 Neb. 387, 395, 803 N.W.2d 497, 505 (2011).

[48] See *United States v. Brown*, 801 F.2d 352, 354 (8th Cir. 1986).

[49] See *State v. Wacker*, 268 Neb. 787, 688 N.W.2d 357 (2004).

testimony for any possible motive he might have to tes-
tify falsely. You should hesitate to convict [Sierra] if you
decide that . . . Mally testified falsely about an important
matter and that there is no other evidence to support his
testimony. In any event, you should convict [Sierra] only
if the evidence satisfies you beyond a reasonable doubt of
his guilt."[50]

Whether Sierra's attorney was deficient for not requesting
an instruction on accomplice testimony depends in part on
whether such an instruction was warranted.

[17,18] A defendant is clearly entitled to a cautionary
instruction on the weight and credibility to be given to the tes-
timony of an alleged accomplice, and the failure to give such
an instruction, when requested, is reversible error.[51] We have
held that whenever a judge decides that the evidence supports
a conclusion that a witness is an accomplice and the defendant
requests a cautionary instruction, the instruction is appropriate
and should be given.[52] This is because any alleged accomplice
testimony should be examined more closely by the trier of fact
for any possible motive that the accomplice might have to tes-
tify falsely.[53]

There is evidence on the record to indicate Mally was an
accomplice. Sierra's attorney adduced evidence on cross-
examination of the benefits he was receiving from the State in
exchange for his testimony, and Mally's plea deal was entered
into evidence. If she had requested a cautionary instruction on
accomplice testimony, the instruction should have been given.
It is unclear on the trial record why Sierra's attorney did not
request such an instruction, but we cannot say on the record
before us that the failure to request a cautionary instruction

---

[50] Brief for appellant at 45.

[51] See *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010).

[52] See *id.*

[53] *Id.*

on accomplice testimony was deficient and prejudicial under *Strickland*.[54] Thus, we find that the record is insufficient for us to address this claim on direct appeal.

### 8. Failure to Maintain
### Adequate Record

Sierra generally contends that his attorney was ineffective for not maintaining a record of certain portions of the trial. This contention rests on the idea that there could have been potential due process violations during these parts of the trial. The portions that went unrecorded included voir dire, closing arguments, and the reading of the instructions to the jury. Without a sufficient record, Sierra argues that he is foreclosed from assigning such violations as errors on appeal. Sierra does not elaborate on what the alleged violations were, except as to the error related to the accomplice jury instruction discussed above.

We have long held that both parties can waive the creation of the record for nonevidentiary proceedings.[55] The burden to create the trial record is on the trial court; however, this burden only extends to the evidence offered at trial and other evidentiary proceedings, and it may be waived for nonevidentiary proceedings.[56] None of the proceedings omitted from the record involved the presentation of evidence at trial.

[19] Raising a claim of ineffective assistance based on the mere conjecture that something inappropriate may have occurred during these proceedings is not enough. Sierra was present during each part of the trial, including those portions not on the record. Thus, he has knowledge of what occurred and was free to assign on appeal any specific claims of deficiency by his attorney during the proceedings not on the

---

[54] See *Strickland v. Washington, supra* note 7.

[55] See *Gerdes v. Klindt's, Inc.*, 247 Neb. 138, 525 N.W.2d 219 (1995).

[56] See, *id.*; *Lockenour v. Sculley*, 8 Neb. App. 254, 592 N.W.2d 161 (1999). See, also, Neb. Ct. R. App. P. § 2-105(A)(2) (rev. 2018).

record. When recordation of parts of a trial is not made mandatory by the rules, the failure to request recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel.[57] When the defendant was present but does not allege what specific deficient conduct was not recorded, the defendant fails to allege with sufficient specificity how trial counsel was deficient by simply alleging that counsel waived creation of a trial record for nonevidentiary proceedings.[58]

Other than the allegation relating to the accomplice jury instruction, Sierra has not assigned any specific allegations of deficient conduct; nor has he made any specific arguments, related to voir dire or closing arguments. We do not address those claims alleging simply that the failure to create a trial record, in itself, constituted ineffective assistance.

Sierra has alleged specifically deficient conduct pertaining to the jury instructions. However, the assignment of ineffective assistance is unrelated to the reading of the jury instructions. Rather, Sierra alleges the deficient conduct was in the failure to request that the giving of the jury instructions be recorded.

Counsel is not required to request a record of the reading of the jury instructions, because instructions to the jury, whether given or refused, when filed in a cause, are a part of the record and need not be embodied in the bill of exceptions.[59] Thus, an ineffective assistance claim asserting deficient conduct based on a failure to request that a record be made of the reading of the jury instructions would need to specifically allege that trial counsel was deficient in conduct during the reading of the jury instructions. Sierra has failed to specify deficient conduct by his trial counsel during the reading of the jury instructions. We find this claim to be without merit.

---

[57] *State v. Jones*, 246 Neb. 673, 522 N.W.2d 414 (1994).

[58] See, *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017); *State v. Jones, supra* note 57.

[59] See *Bennett v. McDonald*, 52 Neb. 278, 72 N.W. 268 (1897).

### 9. FAILURE TO MAINTAIN LAW LICENSE AND APPROPRIATE MORAL STANDING

Lastly, Sierra claims that his attorney's failure to maintain her law license and the investigation into her criminal conduct rendered his attorney per se ineffective. There is no evidence in the record concerning Sierra's attorney's personal conduct or any potential conflict of interest. At the original sentencing hearing, she made a motion to withdraw, it was granted, and the trial court gave a newly appointed public defender additional time to prepare for sentencing. No further details are provided. We find that the record is insufficient for us to address this claim on direct appeal.

### VI. CONCLUSION

For the foregoing reasons, we vacate Sierra's convictions and sentences pursuant to counts III and IV of the State's amended information, which each asserted a separate offense of theft by unlawful taking ($5,000 or more). Furthermore, we find that the district court did not abuse its discretion in denying the motion to withdraw and in granting the State's motion in limine. We find the claims of ineffective assistance of counsel for agreeing not to call Sierra's fiance as a witness, failure to request a continuance, failure to exclude evidence found in Mally's possession, and failure to object to Hanke's testimony about evidence found at Sierra's residence to be without merit. We find the claim of ineffective assistance of counsel for failure to maintain a sufficient record of voir dire, closing arguments, and jury instructions to be insufficiently stated. We find the record is insufficient to address the remaining ineffective assistance of counsel claims on direct appeal.

AFFIRMED IN PART, AND IN PART VACATED.