IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LEFEVER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LUKE LEFEVER, APPELLANT.

Filed March 19, 2024.    No. A-23-065.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed.

Matthew J. McDonald, of Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a jury trial in the Dawson County District Court, Luke LeFever was convicted of possession of a firearm by a prohibited person, theft by unlawful taking, operating a motor vehicle to avoid arrest, and unauthorized use of a motor vehicle. LeFever appeals, claiming the district court did not have subject matter jurisdiction over the case because the Attorney General's office did not have authority to prosecute the case. He further claims the district court committed plain error when it did not create a verbatim record of voir dire and did not provide an unrequested jury instruction. LeFever further asserts numerous claims of ineffective assistance of counsel. We affirm.

- 1 -

## II. BACKGROUND

### 1. JUNE 4, 2018, INCIDENT

On June 4, 2018, Deputy Ivan Castellanos, of the Dawson County sheriff's office, was dispatched on a call regarding a vehicle that had been parked on the side of the road since the previous night. Upon his arrival, Deputy Castellanos approached the vehicle from the passenger side and observed a bag on the passenger seat with the word "cannabis" on it. Deputy Castellanos spoke to the individual occupying the driver's seat who identified himself as LeFever and stepped out of the vehicle. The vehicle, a white Chevy Malibu, was later determined to belong to LeFever's ex-wife. LeFever informed Deputy Castellanos that he "got stuck" in the sand the previous night because the Malibu had a flat tire. He stated that an individual stopped and assisted him in removing the vehicle from the sand the previous night and would be returning to further assist him that morning. LeFever thought the Malibu was possibly damaged when towing it from the sand and it had become inoperable.

Deputy Castellanos asked LeFever whether he had identification on him. LeFever responded that he did not and provided Deputy Castellanos his information by writing it down on a piece of paper. LeFever informed the deputy that his license was suspended. Deputy Castellanos told LeFever that he did not intend to arrest LeFever for driving under suspension but advised LeFever that he needed to have another individual drive the vehicle from their location. The deputy also informed LeFever that he was only permitted to be on the side of the road for 24 hours. Deputy Castellanos went to his vehicle to run LeFever's information. LeFever then entered the Malibu and removed the bag from the passenger seat and placed it near a tire. After speaking with dispatch regarding LeFever's identity, Deputy Castellanos requested that another officer join him. Officer Jill McCandless, an officer from Gothenburg, Nebraska, arrived shortly after.

In an attempt to contact someone who could assist in removing the vehicle, LeFever asked to use Deputy Castellano's phone because LeFever indicated his phone had been stolen the day before. Using the deputy's phone, LeFever was not able to reach anyone at that time. Deputy Castellanos again looked into the passenger side window of the Malibu and asked LeFever where the bag was that he initially observed on the passenger seat. LeFever retrieved it from underneath a wheel of his car and provided it to Deputy Castellanos. Although the deputy did not see any marijuana in the bag, "there was a scent of marijuana still in the bag." LeFever refused to provide consent for Deputy Castellanos to search the Malibu. Deputy Castellanos informed LeFever he was going to search the Malibu and attempted to open the passenger-side door. The door was locked and LeFever refused to unlock it. Deputy Castellanos patted LeFever down, told him to put his hands behind his back, and attempted to detain him. LeFever then began walking away, arguing with the deputy.

Deputy Castellanos drew his taser and commanded LeFever to get down on his knees and place his hands behind his back. Although LeFever got down on his knees, he did not cooperate as Officer McCandless attempted to handcuff him. The deputy gave LeFever commands to give Officer McCandless his arm for the handcuffs, but LeFever would not do it, and instead "jumped out" at the deputy and "tried to knock the taser out of [his] hand." After LeFever "leaped over" towards the deputy, the deputy fired the taser and it made contact on LeFever's back. Officer McCandless again tried to handcuff LeFever, but as Deputy Castellanos got closer to LeFever,

LeFever "leaped at [him] and tried to grab [his] leg." Deputy Castellanos deployed his taser a second time, but LeFever rolled on the ground and broke the taser wires off him and began running away. LeFever attempted to get into Officer McCandless' patrol vehicle, but it was locked. LeFever then ran to a nearby residence where he entered and exited the house and attempted to take keys from an individual there. Unsuccessful, he took a "UTV" ("Gator") and drove off in it. Deputy Castellanos ordered LeFever to stop, and then noticed someone in a "black smaller SUV" down the driveway, with a child in the passenger seat in the front. Concerned that LeFever might try to steal that vehicle, the deputy used his service pistol to fire one shot at the back tire of the Gator.

LeFever drove the Gator to another residence where he took a pickup truck with a trailer from the residence. He drove it to the interstate, where a high-speed pursuit of LeFever by the Nebraska State Patrol took place, and he was eventually subdued. The Malibu was subsequently searched pursuant to a search warrant. Multiple firearms and ammunition were found in the trunk of the vehicle, including a 9-millimeter semi-automatic handgun and magazine, a "12-shot .22 CAL revolver," and an "AR-15 223-5.56 semi-automatic assault rifle," all of which were fully loaded and functional. There was an "ammo box" in the trunk with four plastic baggies containing ammunition; three contained "mostly live .22 caliber ammunition, and one . . . appeared to contain . . . shotgun rounds." A "fanny pack" in the backseat of the vehicle contained 40 rounds of live "5.56 ammo" and two magazines with "5.56 ammunition," which is generally used with an "assault style rifle"; each magazine was fully loaded with approximately 30 rounds.

## 2. PRETRIAL PROCEEDINGS

### (a) Information and Arraignment

On February 20, 2020, the State filed an information charging LeFever with five counts: count I, possession of a firearm by a prohibited person, a Class IB felony, pursuant to Neb. Rev. Stat. § 28-1206(1)(a)(i) (Cum. Supp. 2022); count II, theft by unlawful taking, a Class IIA felony, pursuant to Neb. Rev. Stat. § 28-511(1) (Reissue 2016); count III, operating a motor vehicle to avoid arrest, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-905(3)(a)(iii) (Reissue 2016); count IV, criminal mischief, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-519(1)(a) (Reissue 2016); and count V, unauthorized use of a motor vehicle, a Class III misdemeanor, pursuant to Neb. Rev. Stat. § 28-516(1) (Reissue 2016). The information was signed by a chief deputy attorney general from the office of the Attorney General. At an arraignment hearing, LeFever was informed of the charges against him and the potential penalties they carried. When asked what plea LeFever would be entering, LeFever's counsel stated that LeFever would be "standing mute." As a result, the district court entered a plea of not guilty on LeFever's behalf. An amended information was subsequently filed containing the same charges as those in the original information.

### (b) Hearing on Motion to Suppress

On May 8, 2020, LeFever filed a "Motion for Franks Hearing and to Suppress Evidence," requesting that the district court enter "an order suppressing any evidence obtained from the search of his vehicle . . . on the grounds that said evidence is the fruit of an unconstitutional search and seizure." LeFever claimed the affidavit falsely stated that "'Deputy Castellanos had observed a

bag in the vehicle that was consistent with being acquired from marijuana dispensaries' and 'Deputy Castellanos intended to take LeFever into custody for suspicion of Driving Under Suspension.'" He argued that in the absence of these statements, the affidavit did not provide probable cause for the issuance of the search warrant.

On July 16, 2020, a hearing was held on the motion. During the hearing, the district court received into evidence the affidavit, which served as the basis for the issuance of the warrant to search the Malibu. The affidavit was authored by Sergeant Edward Albrecht with the Dawson County sheriff's office and detailed the events of the June 4, 2018, incident. The affidavit stated that "Deputy Castellanos had observed a bag in the vehicle that was consistent with being acquired from marijuana dispensaries" and that Deputy Castellanos "observed [LeFever] remove it from the vehicle and place it nearby in a set of tires next to the vehicle." It further stated that LeFever indicated that no weapons or drugs were present in the vehicle and that he declined to provide Deputy Castellanos with consent to search the vehicle. The affidavit further stated that "Deputy Castellanos advised that he had intended [to] take[] [LeFever] into custody for suspicion of Driving Under Suspension, however [LeFever] began walking away from the vehicle" and a physical struggle later ensued. Sergeant Albrecht testified at the hearing that he authored the affidavit and that its contents were based upon information he received from Deputy Castellanos and the dashcam video from Deputy Castellanos' vehicle.

At the hearing, Deputy Castellanos testified consistently with the facts set forth previously related to the events of June 4, 2018. He also stated that "[t]he first thing [he] noticed when [he] approached the vehicle was a bag that said cannabis on the passenger seat." The district court received into evidence a photograph of the bag that Deputy Castellanos had observed in LeFever's vehicle. The photograph showed a black bag with green text stating "experience cannabis." Deputy Castellano stated that he could see the entire bag on the passenger seat and that he had seen "hundreds of bags like that." He stated that the bags are "dispensary bags that . . . they put the marijuana in when [a person] buy[s] marijuana at a shop." He stated he believed the bag gave him probable cause to search the vehicle. Deputy Castellanos further stated that he did not recall what he had informed Sergeant Albrecht of when he was drafting the affidavit for the search warrant. He stated that he wrote a report regarding the events of the June 4 incident, which was accessible to Sergeant Albrecht.

The dashcam video was not introduced into evidence at the suppression hearing, but following the hearing, LeFever's trial counsel filed a "Motion to Supplement Record," requesting "an order allowing the record from the . . . [h]earing held on July 16, 2020[,] to be supplemented with additional evidence." It stated that LeFever's counsel did not receive a viewable version of the dashcam video from the State until the day of the suppression hearing and that it was not viewed prior to the hearing. He stated that the contents of the video would be "relevant in assisting the court in deciding the matter." The district court granted LeFever's motion to supplement the record.

On October 14, 2020, the district court entered an order overruling LeFever's "Motion for Franks Hearing and to Suppress Evidence." The court noted that it granted LeFever's motion to supplement the record and that "a DVD disc was marked as Exhibit 6 and received into evidence." The court stated that "[a]t that time, the motions were submitted and taken under advisement." In the "Factual Background" section of its order, the court noted that "[t]he entirety of [Deputy]

Castellanos' investigation . . . appears on the record made by the video and audio equipment." The court further noted that, in the search warrant affidavit, Sergeant Albrecht stated that Deputy Castellanos:

> advised Le[F]ever he intended to take him into custody for suspicion of driving under suspension and "Le[F]ever began walking away from the vehicle." In fact, the statement Le[F]ever was under arrest for suspicion of driving under suspension did not occur until after Le[F]ever had walked away from the vehicle after refusing to put his hands behind his back.

The district court determined that while Sergeant Albrecht's affidavit did not contain a "minute-by-minute, chronological description of the activity between [Deputy] Castellanos and Le[F]ever, the information Albrecht summarized in his affidavit was accurate, truthful, and did not assert misleading or false information." The court stated that "[t]he probable cause Castellanos had when he asked Le[F]ever for permission to search the car was the presence of the marijuana bag and the fact Le[F]ever had, by his own admission, driven the car without a valid operator's license." The court noted that LeFever stayed in the vehicle overnight, removed a bag marked as having contained marijuana from the vehicle and locked the doors of the vehicle, refused a search even though he stated he had nothing in the car, and resisted being put in handcuffs and fled the scene. The court determined that based on the totality of what Deputy Castellanos had observed, Castellanos had probable cause to search the vehicle. It further found there were no deliberate falsehoods in or material omissions from the affidavit, and that it provided sufficient probable cause for the issuance of the search warrant.

(c) Motion to Change Venue

On September 26, 2022, LeFever, without the assistance of counsel, filed a "Motion for Change of Venue." In the motion, he requested that the court enter "an order to transfer the venue of the instant case to the District Court of Lancaster County, Nebraska." In support of his motion, LeFever claimed (unedited):

> The media coverage of this case and the events that gave rise to this case from the beginning have been intentionally mis-leading to the public, in an effort to create bias towards the defendant so that the limited jury pool is tainted and the defendant could not receive a fair trial in Dawson County.

He went on to discuss the various articles which he claimed were misleading. LeFever claimed he asked his trial counsel to file the motion, but counsel refused to do so. We will provide more detail about the articles when discussing LeFever's claims of ineffective assistance of trial counsel.

The district court held a pretrial conference hearing on October 21, 2022, where the State made an oral motion to dismiss count IV (criminal mischief) and the court dismissed the charge. At the hearing, the court also addressed LeFever's motion to change venue. LeFever discussed the media coverage he cited in his motion; he offered, and the court received, some of the various articles cited to in his motion. In opposing LeFever's motion, the State expressed that LeFever had not met his burden of showing that the pretrial publicity made it impossible to secure a fair and impartial jury in Dawson County. The State pointed out that the most recent article was published

in January 2021, and they were "almost at the end of 2022." The State further noted that there was no evidence demonstrating "the reach and breadth" of the articles.

On October 27, 2022, the district court entered an order denying LeFever's motion to change venue. The court thoroughly addressed each item of publicity LeFever claimed to be prejudicial to his ability to have a fair trial in Dawson County. It found that the "lapse of time from the dates of publication to the time of the trial" weighed against LeFever's request, and it further found that "because the media coverage was factual, not misleading, not invidious, not inflammatory, not recent," and the evidence did not show that the coverage was pervasive, the motion should be overruled.

3. TRIAL

A jury trial was held on November 7 and 8, 2022. Evidence related to the events occurring on June 4, 2018, as described previously, was presented through witness testimony, photographs, and video recordings. We set forth additional details as may be relevant to the errors assigned.

(a) Exhibit 56

At the onset of trial and outside of the presence of the jury, the State informed the district court that with regard to LeFever's charge for possession of a firearm by a prohibited person, it was required to prove that LeFever had a prior felony conviction. The State had offered a trial stipulation regarding LeFever's prior felony conviction "to prevent any prejudice from the actual conviction" but it was the State's "understanding that . . . LeFever [was] not willing to sign the trial stipulation."

The State therefore offered exhibit 56 into evidence, which was a certified copy of the transcript in a separate case in which LeFever was convicted of a felony in 2007. It included an information, an affidavit of return for the information, and three journal entries and orders relating to that case. LeFever's counsel had no objection to the exhibit, and it was received into evidence.

(b) Testimony of Deputy Castellanos

Called by the State, Deputy Castellanos testified consistently about the events of June 4, 2018, as described previously. LeFever's trial counsel cross-examined Deputy Castellanos, during which the deputy stated that he requested backup assistance due to LeFever's demeanor. Trial counsel questioned the deputy about whether it was illegal to be in possession of a marijuana bag. The deputy said no, but that he wanted to search the vehicle because of the bag since it was "a dispensary bag, not just a marijuana bag. Something they specifically give you at a dispensary when you purchase marijuana." Trial counsel questioned the deputy about telling LeFever several times that he was not going to arrest him. Deputy Castellanos responded that he planned to give LeFever a citation, with the permission of a supervisor, even though "Dawson County arrests for DUS." He stated that he determined he would be arresting LeFever when LeFever could not get ahold of somebody to drive the Malibu.

(c) Sergeant Albrecht's Testimony

Sergeant Albrecht testified consistently with his search warrant affidavit as set forth previously. He also testified that he assisted in conducting a follow up investigation on the June 4, 2018, incident. When the State asked Sergeant Albrecht about the search of the interior of the

vehicle, trial counsel renewed the defense's objection regarding "the obtaining of a search warrant and suppression of all evidence that came from that warrant." The district court denied the renewed motion. Sergeant Albrecht also testified that he took photographs of the vehicle and its contents during the search. Those photographs were received into evidence, including pictures of the firearms and ammunition described previously.

### (d) LeFever's Affidavit

The State offered into evidence a court filing from a separate civil case, titled "Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment." The State noted that the plaintiff in the case was LeFever and the defendants were Deputy Castellanos, as well as other law enforcement officers involved in the June 4, 2018, incident. The document described the events of that day and stated numerous times that LeFever was afraid for his life when Deputy Castellanos tased him and fired a shot in his direction. After the document was received into evidence, the State rested its case. Defense counsel then moved for a directed verdict. The district court overruled the motion.

### (e) LeFever's Questioning of Witnesses

On November 8, 2022, the second day of trial, LeFever filed a "Motion to Recall Witnesses," requesting that the district court allow LeFever to question Sergeant Albrecht and Deputy Castellanos at trial. The court addressed LeFever's motion outside the presence of the jury and advised him that he and trial counsel "need[ed] to be on the same page . . . about what [he was] going to do on [his] defense." LeFever then informed the court that "the communication ha[d] failed" between him and trial counsel and he had taken "it upon [him]self to at least put something down for [his] own defense." He informed the court that trial counsel would not speak with him and did not bring him certain evidence he requested prior to trial.

The district court asked trial counsel whether he intended to question the witnesses in LeFever's defense, or if LeFever would be asking questions himself. Trial counsel informed the court that LeFever would be asking the questions. The court then stated to trial counsel, "You can direct him to do that if that's your instructions to your client." Trial counsel responded, "Sure." The court asked counsel if he reviewed the questions with LeFever, to which he responded, "We did." The court then asked trial counsel, "And you prefer do to it that way, is that your direction?" Trial counsel responded, "Yes." LeFever called Sergeant Albrecht and Deputy Castellanos as witnesses. During the questioning, the State objected on numerous occasions to many of LeFever's questions of the witnesses. Most of the objections were sustained. Sergeant Albrecht and Deputy Castellanos testified consistently with portions of their prior testimony. LeFever then rested.

### (f) Jury Instructions, Verdicts, and Sentences

Outside the presence of the jury, the State and trial counsel discussed the jury instructions with the district court. Trial counsel did not object to the jury instructions or request any changes. Closing arguments were then made to the jury.

Following deliberation, the jury found LeFever guilty of possession of a firearm by a prohibited person, theft by unlawful taking, operating a motor vehicle to avoid arrest, and unauthorized use of a motor vehicle. On November 16, 2022, the district court entered judgment

on the verdicts of the jury. Following a sentencing hearing, the court entered a sentencing order on January 30, 2023. LeFever was sentenced to concurrent terms of 20 to 22 years' imprisonment on count I (possession of a firearm by a prohibited person), 5 to 7 years' imprisonment on count II (theft by unlawful taking), 24 months' imprisonment on count III (operating a motor vehicle to avoid arrest), and 3 months' incarceration on count V (unauthorized use of a motor vehicle). LeFever was given 6 days' credit for time served.

LeFever appeals.

## III. ASSIGNMENTS OF ERROR

Lefever assigns, reordered and restated, that the district court (1) did not have subject matter jurisdiction over the case because the Attorney General's office did not have authority to file the charges in the matter, (2) committed plain error when it failed to ensure that a verbatim record of voir dire was made, and (3) committed plain error when it failed to give the jury an unrequested "Lessor of Evils" jury instruction. LeFever further assigns numerous claims of ineffective assistance of trial counsel.

## IV. STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *State v. Rodriguez-Torres*, 275 Neb. 363, 746 N.W.2d 686 (2008).

To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## V. ANALYSIS

### 1. JURISDICTION

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Rodriguez-Torres, supra.* LeFever asserts that the district court did not have subject matter jurisdiction to proceed in this case because the Attorney General's office did not have authority to prosecute the case. He claims the Attorney General's office is only authorized to prosecute a case when it is requested to do so by the county attorney or appointed to do so by a court, neither of which took place in this case.

We disagree with LeFever's understanding of the prosecutorial authority of the Attorney General's office.

Neb. Rev. Stat. § 84-201 et. seq. (Reissue 2014 & Cum. Supp. 2022) establishes the Department of Justice, appoints the Attorney General as its head, and sets forth the duties and authorities of the Attorney General. Section 84-203 authorizes the Attorney General "to appear for the state and prosecute and defend, in any court or before any officer, board or tribunal, any cause or matter, civil or criminal, in which the state may be a party or interested." Section 84-204 provides that "[t]he Attorney General and the Department of Justice shall have the same powers and prerogatives in each of the several counties of the state as the county attorneys have in their respective counties." Under § 84-206, the Attorney General may appoint a deputy attorney general, who "may do and perform, in the absence of the Attorney General, all the acts and duties that may be authorized and required to be performed by the Attorney General." Further, this court previously determined that the Attorney General, as well as delegated individuals such as Assistant Attorneys General have "the same authority in each county as the county attorney." See *State v. Glazebrook*, 22 Neb. App. 621, 628, 859 N.W.2d 341, 349 (2015).

LeFever acknowledges that, by statute, the Attorney General's office has a general grant of authority to prosecute criminal cases. However, he claims that Neb. Rev. Stat. §§ 84-205(13) and 23-1204.01 (Reissue 2022) are more specific and thus control. We disagree that the statutes he refers to limit the Attorney General's authority in this case. Section 84-205(13) provides, in relevant part, that "[u]pon the written request of a county attorney, the [the Attorney General's Child Protection Division] shall provide consultation and advise and assist in the preparation of the trial of any case involving a crime against a child." This statute deals with the Attorney General's Child Protection Division and its duty to assist in investigating and prosecuting cases involving crimes perpetrated against children upon the request of a county attorney. This case does not involve such crimes and the statute is therefore inapplicable.

Section 23-1204.01 provides that the county attorney:

may, under the direction of the district court, procure such assistance in any investigation or appearance or the trial of any person charged with a crime which is a felony, as he may deem necessary for the trial thereof, and such assistant or assistants shall be allowed such compensation for said services as the court shall determine . . . .

This statute is permissive and deals with the compensation of individuals assisting the county attorney in investigating or prosecuting an individual charged with a felony. No part of § 23-1204.01 limits the authority of the Attorney General to prosecute criminal cases.

The Attorney General had the authority to prosecute this case and the district court had subject matter jurisdiction to proceed with the case.

### 2. PLAIN ERROR REGARDING VOIR DIRE

LeFever claims that the district court committed plain error when it failed to ensure that a verbatim record was made of voir dire even though trial counsel did not request such a record be made. He contends that under Neb. Ct. R. App. P. § 2-105(A)(2) (rev. 2022), the trial court and the court reporter had a duty "to ensure all parts of the trial, including voir dire, are preserved in some way" to allow appellate counsel to review the voir dire proceedings for error. Brief for

appellant at 34. We disagree that such a duty exists, absent a request by one of the parties or the trial court.

Section 2-105(A) sets forth the procedure for making and preserving a record and the related duties of the trial court and court reporting personnel. Section 2-105(A)(1) provides that court reporting personnel "shall in all instances make a verbatim record of the evidence offered at trial or other evidentiary proceeding." Section 2-105(A)(1) further provides that "[t]his record may not be waived." Section 2-105(A)(2) provides that "[u]pon the request of the court or of any party" court reporting personnel "shall make or have made a verbatim record of anything and everything said or done by anyone in the course of trial or any other proceeding, including, but not limited to . . . the voir dire examinations."

A plain reading of the rules indicates that court reporting personnel only have an automatic duty to create a verbatim record of evidentiary proceedings. Voir dire does not involve the presentation of evidence. Voir dire is, however, listed in § 2-105(A)(2) among the proceedings which a party or the court *may* request to have a verbatim record made. Section 2-105(A)(3) provides that "any party may request the court reporting personnel to make or have made a verbatim record of any particular part or portion of the proceedings not required by subsection (1) . . . , and the court reporting personnel shall comply with such request." As such, court reporting personnel only have a duty to create a verbatim record of nonevidentiary proceedings, such as voir dire, upon the request of a party or the court.

We further note that the Nebraska Supreme Court has held that "[t]he burden to create the trial record is on the trial court; however, this burden only extends to the evidence offered at trial and other evidentiary proceedings, and it may be waived for nonevidentiary proceedings." See *State v. Sierra*, 305 Neb. 249, 276, 939 N.W.2d 808, 831 (2020). Here, the record does not show that either the district court or the parties requested that a verbatim record be made of voir dire. In fact, LeFever acknowledges in his brief on appeal that trial counsel failed to request such a record be made. Therefore, the court and the court reporting personnel did not have a duty to create a verbatim record of the voir dire proceedings in this case. We find no plain error by the court in this regard.

### 3. PLAIN ERROR REGARDING JURY INSTRUCTION

LeFever argues that the district court erred when it failed to give the jury "an unrequested jury instruction: Lessor of Evils" even though "the evidence was reasonably raised during trial by defense counsel and argued during opening and closing arguments." Brief for appellant at 29. He contends the defense of justification under Neb. Rev. Stat. § 28-1407 (Reissue 2016) and NJI2d Crim 7.6 was applicable for Counts II (theft by unlawful taking), III (operating a motor vehicle to avoid arrest), and V (unauthorized use of a motor vehicle). Specifically, LeFever claims the dashcam video and the "Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment," which were both received into evidence at trial, showed his "state of mind regarding [his] belief that the police were using unlawful force and that he was afraid for his life." Brief for appellant at 30. He suggests that it was for the jury to decide whether he had the "right to flee from the deputy tasing him and stealing a UTV and vehicle to avoid a potentially unlawful arrest and unlawful use of force." *Id*. at 31. He claims that the harm he was trying to avoid, "being tased and shot," was "greater than stealing a UTV or truck or operating a motor vehicle to avoid arrest." *Id*.

- 10 -

As a general rule, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. See *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022). Here, the "choice of evils" instruction was not warranted because it was LeFever's own behaviors that brought about law enforcement's need to use force to arrest him. So any fear he made have felt as the events of June 4, 2018, unfolded, was a consequence of his own making.

Section 28-1407 governs the justification or "choice of evils" defense and provides that:

(1) Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:

(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

. . . .

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

This statute reflects the Nebraska Legislature's policy that certain circumstances excuse conduct that would otherwise be criminal. *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992). The defense, therefore, operates to legally excuse the conduct that would otherwise subject a person to criminal sanctions. *Id*.

NJI2d Crim. 7.6, the "Choice of Lesser Harm" jury instruction provides:

The defendant acted to avoid a greater harm if:

(1) the harm (he, she) sought to avoid was greater than the harm sought to be prevented by the law defining (here insert crime); and

(2) the defendant reasonably believed that (his, her) conduct was necessary to avoid a specific and immediate threat of harm; and

(3) the defendant reasonably believed that acting as (he, she) did was the least harmful alternative to avoid this threatened harm.

The fact that the defendant may have been wrong in what (he, she) believed does not matter so long as there was a reasonable basis for what (he, she) believed and (he, she) acted reasonably in response to (his, her) beliefs.

Here, however, the record shows that LeFever was reckless or negligent in bringing about the situation requiring a use of force by law enforcement to arrest him. When Deputy Castellanos was attempting to detain him, LeFever began walking away. He disobeyed the deputy's commands that he place his hands behind his back to allow Officer McCandless to handcuff him. LeFever continued to resist after being informed that he was being arrested for driving under suspension. There was no specific and immediate harm threatening LeFever at that time. Regardless, while Officer McCandless was attempting to handcuff LeFever, he lunged at Deputy Castellanos twice, once reaching for the taser and again when reaching out for the deputy's leg. By his own actions, LeFever escalated the situation with his resistance and aggression. Accordingly, the evidence did

- 11 -

not support a justification defense and the district court did not commit plain error when it did not provide the jury with a "choice of lesser harm" instruction.

## 4. INEFFECTIVE ASSISTANCE OF COUNSEL

LeFever is represented by different counsel on direct appeal than he was at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide deficient performance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Anderson, supra*. The record on direct appeal is sufficient to review a claim of ineffective assistance of trial counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

With these governing principles in mind, we turn now to LeFever's ineffective assistance of trial counsel claims.

LeFever assigns eight separate claims of ineffective assistance of trial counsel, although in one claim, which we will address under the subheading, "Abandonment at Trial," he lists numerous allegations of ineffective assistance by his trial counsel. We will extract from that list his claim regarding trial counsel's failure to file a motion for change of venue and will address it separately. We will address the assigned ineffective assistance of trial counsel claims in this order: (a) failure to properly object to jurisdiction; (b) failure to request a verbatim record of voir dire; (c) failure to request a choice of lesser harm jury instruction; (d) failure to file a motion for change of venue; (e) failure to properly address exhibit 56; (f) failure to preserve the issue of an illegal search and seizure; (g) failure to provide civilian clothing; (h) abandonment at trial; and (i) cumulative error.

### (a) Failure to Properly Object to Jurisdiction

LeFever contends he "should receive a new trial if his counsel failed to adequately object to the Attorney General's office trying [his] case without proper authority" under §§ 84-205(13) and 23-1204.01. Brief for appellant at 41. We previously determined that the Attorney General's

office had the authority to prosecute the case and the district court had subject matter jurisdiction over the matter. Any objection based upon lack of subject matter jurisdiction would have been overruled. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). This claim of ineffective assistance of trial counsel fails.

### (b) Failure to Request Verbatim Record of Voir Dire

LeFever contends he received ineffective assistance when trial counsel failed to request that a verbatim record be made of the voir dire proceedings, thus preventing appellate counsel from reviewing the proceedings for error. LeFever does not explain with any specificity what occurred during voir dire which would have warranted any kind of relief. He suggests that "there were appellate issues that needed to be reviewed that arose during jury selection." Brief for appellant at 36. But the only matters he refers to relate to the alleged "inaccurate news coverage" about him and his motion to change venue, and the district court denying his challenge to one juror for cause, thus necessitating his use of a peremptory challenge. *Id*. He claims "[t]here could not be a legitimate trial strategy for failing to ensure the court reporter preserved or recorded jury selection." *Id*.

We have previously addressed that Neb. Ct. R. App. P. § 2-105(A)(2) only requires the making of a verbatim record for evidentiary proceedings. Whether a record of voir dire is made is discretionary to the court or the parties. The transcription of voir dire is required only "when requested by counsel, any party, or the court." *State v. Jones*, 246 Neb. 673, 675, 522 N.W.2d 414, 415 (1994). "When recordation of parts of a trial is not mandatory by the rules, the failure to request recordation cannot be said, ipso facto, to constitute negligence or inadequacy of counsel." *State v. Sierra*, 305 Neb. 249, 277, 939 N.W.2d 808, 831 (2020). Further, "[w]hen the defendant was present but does not allege what specific deficient conduct was not recorded, the defendant fails to allege with sufficient specificity how trial counsel was deficient by simply alleging that counsel waived creation of a trial record for nonevidentiary proceedings." *Id*.

Given that a verbatim record of voir dire is not mandatory and given LeFever's generalized claim of ineffective assistance of counsel in this regard, we find that LeFever has failed to sufficiently allege how his trial counsel's performance was deficient for not requesting a verbatim record of voir dire, and therefore, this claim fails. The record reflects that the State was given 12 peremptory strikes; LeFever was given 13 peremptory strikes. LeFever does not claim that by using one of his 13 peremptory strikes for one potential juror he felt should have been struck for cause that he was then unable to strike another juror who was subsequently empaneled. His general reference to his motion for change of venue and his need to use a peremptory challenge instead of a juror being struck for cause are not alleged with sufficient specificity to preserve this claim.

### (c) Failure to Request Choice of Lesser Harm Jury Instruction

LeFever contends that he was denied effective assistance when trial counsel "failed to request an instruction on Justification, Choice of Evils, under [§] 28-1407 and NJI2d Crim. 7.6." Brief for appellant at 32. He argues that the "defense was reasonably raised by the evidence" and by trial counsel during his opening and closing argument. *Id*. He suggests that "an instruction would have allowed the jury to decide whether [his] actions were justified and if the officer used

- 13 -

unlawful force." *Id*. He notes that trial counsel failed to object to the jury instructions or to request a change to the proposed instructions at trial. As we previously determined, the justification defense would not have been available to LeFever, given that he brought about the situation resulting in law enforcement's use of force to arrest him. There was no specific and immediate harm threatening LeFever at the time he resisted arrest and lunged at Deputy Castellanos the first time. As such, trial counsel could not have been ineffective for failing to request a jury instruction for the defense, nor could LeFever have been prejudiced by trial counsel's failure to do so. This claim of ineffective assistance of counsel also fails.

(d) Failure to File Motion to Change Venue

LeFever argues that he received ineffective assistance when trial counsel failed to file a motion to change venue and LeFever had to file and argue the motion pro se. He contends that he asked his counsel "numerous times to file a motion to change venue due to the numerous news article[s] about his case including one that contained false or misleading information." Brief for appellant at 25. LeFever claims that his attorney "refused and wrote a letter to [LeFever] telling him to file it himself because he would not." *Id*. This caused LeFever to file his own motion pro se. We first consider LeFever's pro se motion to change venue.

Under Neb. Rev. Stat. § 29-1301 (Cum. Supp. 2022), upon motion of the defendant, a court must "transfer the proceeding to any other district or county in the state as determined by the court" when it appears "to the court by affidavits that a fair and impartial trial cannot be had therein." Juror exposure to information about a defendant's prior convictions or to news accounts of the crime with which he is charged does not alone presumptively deprive the defendant of due process. *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009). A court will normally not presume unconstitutional partiality because of media coverage, unless the record shows a barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion or resulting in a trial atmosphere utterly corrupted by press coverage. *Id*. The quantum of news coverage is not dispositive. *Id*. Even the community's extensive knowledge about the crime or the defendant through pretrial publicity is insufficient in itself to render a trial constitutionally unfair when the media coverage consists of merely factual accounts that do not reflect animus or hostility toward the defendant. *Id*.

In its October 27, 2022, order denying LeFever's September 26 "Motion for Change of Venue," the district court summarized the articles which LeFever offered as evidence in support of his motion as:

> six media accounts, viz., two from radio station KRVN operated from Lexington, Dawson County (exhibits 9 and 11 were obtained from KRVN's website), an editorial from the McCook Gazette, a newspaper of general circulation in Red Willow County, and three articles from Omaha television station "7KETV" (exhibits 12, 13, and 14 were obtained from 7KETV's website).

The district court noted that the KRVN articles were published on December 2, 2020, and January 6, 2021, and reported that LeFever stole a utility vehicle while fleeing from law enforcement officers in Gothenburg and that North Platte police stated he stole a pickup truck and attempted to flee from law enforcement on I-80. The pursuit ended when LeFever was shot after

- 14 -

he "appeared to purposely ram a police vehicle and backed toward the officers" and "LeFever was transferred to an Omaha hospital for treatment." Both articles also stated that approximately 6 months later, LeFever "fired a handgun at a Howard County Sheriff's deputy during a traffic stop" and "fled in a sheriff's vehicle. After a second exchange of gunfire LeFever fled on foot and was later found in a creek bed."

The district court also described the accounts from 7KETV and the McCook Gazette as "all relating to the medical and other costs counties bear when prosecuting defendants accused of crimes and related some, but not all of LeFever's conduct reported by KRVN." The 7KETV accounts were published in 2019 on February 18, 19, and 25, and the McCook Gazette editorial was published the same year on February 25.

Ultimately, the district court found that:

because the media coverage was factual, not misleading, not invidious, not inflammatory, not recent, and because the evidence did not show the coverage was pervasive, the motion to change venue should be and hereby is overruled and denied.

We agree with the district court's assessment. Trial took place in November 2022, long after the news coverage of these events. Further, as indicated by the trial court, the coverage was factual and was not inflammatory. Since the pretrial publicity was insufficient to render LeFever's trial constitutionally unfair, the district court correctly denied LeFever's pro se motion. Therefore, based on the record created pro se by LeFever on this issue, we conclude the record demonstrates that LeFever would not be able to establish prejudice.

That said, we cannot know whether the record on this issue could have been expanded had LeFever's trial counsel filed and argued the motion as requested by LeFever. If the full extent of the evidence available to support LeFever's motion to change venue is what was already submitted to and addressed by the district court as set forth above, then LeFever's claim of ineffective assistance would fail because as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. See *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). The record does not reveal whether additional evidence in support of the motion may have been available that could have resulted in a different decision by the district court, nor does the record reveal whether trial counsel refused LeFever's request to file the motion for strategic reasons or otherwise. As such, this claim cannot be fully resolved on this record. See *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015) (record silent as to counsel's motivations in failing to bring motion to withdraw plea despite defendant's request to do so; while possible refusal to bring motion was strategic decision, without more complete record, claim cannot be addressed).

(e) Failure to Properly Address Exhibit 56

LeFever contends that his trial counsel was ineffective when he advised LeFever not to stipulate that he had a prior felony conviction, failed to object to exhibit 56, and failed to request a limiting instruction on the use of exhibit 56. Exhibit 56 was the transcript from a separate criminal case against LeFever from 2007, which included charging documents and the court's journal entries and orders. The information charged LeFever with three counts: robbery, use of a firearm to commit a felony, and theft by taking. One journal entry indicated that LeFever pled not guilty to the three charges. Another journal entry and order indicated that LeFever later pled "No Contest"

- 15 -

to the robbery charge, that the court found LeFever guilty of robbery, and that the other counts would be dismissed. Another journal entry indicated that the court sentenced LeFever to 3 to 5 years' imprisonment for the robbery conviction, to "be served consecutive to the sentence imposed in the Phelps County case." LeFever was also ordered to pay the costs of prosecution, as well as restitution in the amount of $1,196.59.

Exhibit 56 was introduced into evidence to show that LeFever had been previously convicted of a felony and was therefore a "prohibited person" for the possession of a firearm by a prohibited person charge. LeFever argues that "the other charges and the sentence detailed in exhibit 56 were not relevant" and the "probative value of the evidence was outweighed by the danger of unfair prejudice," particularly since trial counsel failed to request a limiting instruction on the use of exhibit 56. Brief for appellant at 37-38. He argues this "evidence also falls under other acts evidence under [Neb. Rev. Stat. § 27-404 (Cum. Supp. 2022)]." Brief for appellant at 38.

As described earlier in this opinion, the State had offered a trial stipulation regarding LeFever's prior felony conviction "to prevent any prejudice from the actual conviction" but it was the State's "understanding that . . . LeFever [was] not willing to sign the trial stipulation." Although we cannot tell from the record whether LeFever independently refused to stipulate or whether his decision was made on advice of counsel, we nevertheless conclude we can address this claim on direct appeal because LeFever cannot establish prejudice.

To show prejudice, LeFever must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. LeFever suggests that exhibit 56 would have led the jury to believe he was dangerous and that the jury would have improperly decided the case on that basis. We disagree. In light of the extensive inculpatory evidence presented against LeFever, admission of the specific nature of his prior conviction would not have had a substantial influence on the outcome of this case. The evidence against LeFever included the testimony of multiple law enforcement officers, the individuals who witnessed the unauthorized taking of the vehicles by LeFever during the June 4, 2018, incident; a dashcam video capturing LeFever resisting arrest and fleeing; and numerous photographs of the scene of the incident and subsequently discovered items, including the weapons and ammunition found in the Malibu backseat and trunk. Given the ample evidence against LeFever, there is no reasonable probability that the outcome of the case would have been different but for the admission of exhibit 56 or the absence of a limiting instruction related to it. This claim of ineffective assistance of counsel also fails.

### (f) Failure to Preserve Issue of Illegal Search and Seizure

LeFever filed a motion to suppress prior to trial, and following a hearing, the district court denied the motion. LeFever argues that trial counsel "failed to properly preserve at trial the illegal search and seizure of appellant and his vehicle in violation of the 4th and 14th Amendments of the U.S. Constitution, Article I, Section 7 of the Nebraska Constitution, and Nebraska Revised Statutes Section 29-822" and did not admit the dashcam video into evidence at the suppression hearing, "denying [him] the effective assistance of counsel as guaranteed by the 6th and 14[th] Amendments

to the U.S. Constitution, Article I, Section 11 of the Nebraska Constitution, and *Strickland v. Washington,* 466 U.S. 668 (1984)." Brief for appellant at 41-42. He acknowledges that trial counsel renewed an objection to the testimony of Sergeant Albrecht but complains that counsel did not request a continuing objection when, during the sergeant's testimony, photos of the weapons found in the trunk were offered into evidence. He argues that there could not have been a legitimate trial strategy in failing to ask for a continuing objection at trial during testimony regarding weapons found in LeFever's vehicle or at the introduction of the photographs of the weapons. LeFever stated that this error prejudiced him because without the evidence found in the vehicle, he could not have been convicted of Count I (possession of a firearm by a prohibited person).

### (i) Seizure of Person

In arguing this assignment of error, LeFever dedicates a significant portion of his argument claiming that he was unlawfully detained. As pointed out by the State, LeFever did not object to any evidence on this basis at trial, nor does the legality of his detention have any bearing on the admissibility of the evidence seized from the Malibu. We therefore need not address that portion of his argument.

### (ii) Seizure of Evidence in Vehicle

We note that as part of this assigned error, LeFever argues trial counsel failed to admit the dashcam video into evidence during the July 16, 2020, hearing on his motion to suppress the evidence seized from the Malibu. However, following the hearing, his trial counsel filed a motion to supplement the record on the issue, wherein he explained that he did not receive a viewable version of the video until the date of the hearing. The district court granted the motion and, in its order overruling LeFever's motion to suppress, noted that "[t]he entirety of [Deputy] Castellanos' investigation . . . appears on the record made by the video and audio equipment." The court also made numerous references to the video throughout its order. Therefore, the dashcam video was received and reviewed by the court before reaching its decision on LeFever's motion to suppress. There can be no prejudice claimed here.

As to the remainder of LeFever's argument, we find that trial counsel's failure to object to the evidence found in the Malibu did not constitute ineffective assistance of counsel because, as the district court properly concluded, law enforcement lawfully obtained the evidence pursuant to a valid search warrant. A search warrant, to be valid, must be supported by an affidavit which establishes probable cause. *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595, *cert. denied*, 143 S. Ct. 404, 214 L. Ed. 2d 201 (2022). In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. *Id.* The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *Id.*

Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found in the item to be searched. *Id.* In evaluating the sufficiency of an affidavit used to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the

affidavit, and evidence which emerges after the warrant is issued has no bearing on whether the warrant was validly issued. *Id.*

Here, in the affidavit in support of the search warrant, Sergeant Albrecht stated that "Deputy Castellanos had observed a bag in the vehicle that was consistent with being acquired from marijuana dispensaries" and he "observed LeFever remove it from the vehicle and place it nearby in a set of a tires next to the vehicle." Sergeant Albrecht stated that LeFever tested positive for methamphetamine and barbiturates when he was taken into custody. The vehicle was impounded on June 7, 2018, following LeFever's arrest and law enforcement later conducted "a drug sniff using a certified K-9 trained in the detection of drugs." The K-9 "positively alerted to the presence of drugs in several points around the exterior of the vehicle." Also, from the outside of the vehicle, officers could see, among other things, a rifle scope, a large knife, a box of ammunition, and oil used to clean and lubricate firearms. Sergeant Albrecht indicated that some of the items in the vehicle were consistent with firearm use and maintenance. Sergeant Albrecht further stated in the affidavit that it was determined that LeFever had prior felony convictions. When LeFever was taken into custody by law enforcement, ammunition was found in LeFever's pants pocket which "can be associated with 'assault rifle' type firearms."

Sergeant Albrecht's affidavit provided sufficient facts to show probable cause to justify the issuance of the search warrant. Since law enforcement lawfully obtained the evidence found in the Malibu, any objection based on the admissibility of the evidence would have been overruled. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Schwaderer*, 296 Neb. 932, 898 N.W.2d 318 (2017). Therefore, this claim of ineffective assistance of counsel fails.

### (g) Failure to Provide Civilian Clothing

LeFever contends that he was denied effective assistance when trial counsel failed "to ensure [he] had civilian clothes to wear during his trial." Brief for appellant at 27. The Nebraska Supreme Court has said that when an incarcerated criminal defendant makes a request to be tried in civilian clothing, that request must generally be granted. See *State v. Sorich*, 226 Neb. 547, 412 N.W.2d 484 (1987). Here, the record reflects that on October 13, 2022, LeFever filed a "Motion for Civilian Clothing," requesting to wear civilian clothing in the presence of the jury. On October 19, the district court granted LeFever's motion. However, at trial, Deputy Castellanos identified LeFever as the person wearing "a brown . . . jail uniform." The record does not disclose any reasons LeFever may have dressed in his jail uniform for trial after his request to appear in civilian clothing was granted. Therefore, the record is insufficient to address this claim of ineffective assistance of counsel on direct appeal.

### (h) Abandonment at Trial

LeFever contends his trial counsel abandoned him during trial,

> leaving him to represent himself at times, resulting in structural error, failing to communicate with appellant resulting in a breakdown of communications, failing to adequately review discovery with appellant, failing to file a motion to change venue and telling appellant to file his own motion to change venue, having appellant question his own

witnesses at trial, and refusing to provide assistance to appellant at trial when asked to help with questions to ask witnesses prejudicing appellant, which should result in a new trial.

Brief for appellant at 7. Besides his argument regarding trial counsel refusing to file a motion to change venue, which we addressed earlier, LeFever also contends that trial counsel claimed he would "come to the jail before the start of trial to meet [LeFever] to go over new discovery and discuss trial strategy," but counsel never showed up. *Id*. at 25. LeFever claims trial counsel indicated witnesses would be called as part of his defense, but at trial, trial counsel did not call any witnesses and did not explain why. "The breakdown was so severe, [LeFever] told the court he wished to call two witnesses himself," (both of whom had previously testified on behalf of the State). *Id.* LeFever claims he asked his trial counsel for help while questioning these witnesses, but that trial counsel refused to do so. LeFever claims he complained to the trial judge about his attorney, but no inquiry was made regarding the issues.

The record on direct appeal reflects that there was a breakdown in communications between LeFever and trial counsel. However, the record does not show why the breakdown occurred and what effect it may have had on LeFever's defense. The record also does not show why trial counsel did not review discovery with LeFever as alleged or why LeFever questioned witnesses himself. Although it is unclear whether these alleged deficiencies could have resulted in prejudice given the substantial evidence supporting LeFever's convictions, we nevertheless find that the record is not sufficient to address this claim of ineffective assistance of trial counsel on direct appeal.

### (i) Cumulative Error

LeFever also argues the accumulation of errors in this case are such that even if any one error does not require reversal, the aggregation of errors requires his convictions be reversed and the case remanded for a new trial. The Nebraska Supreme Court has recognized the doctrine of cumulative error in the context of a criminal jury trial, stating that "while one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect was to deprive the defendant of his constitutional right to a public trial by an impartial jury." *State v. Smith*, 286 Neb. 856, 893, 839 N.W.2d 333, 363 (2013) (internal quotations omitted). We found no merit to any of LeFever's assigned errors related to alleged plain error committed by the district court. We also concluded that the majority of his claims of ineffective assistance of trial counsel failed, with only three claims not addressed. Accordingly, we find no prejudicial error under the cumulative error doctrine.

### (j) Summary of Ineffective Assistance of Trial Counsel Claims

For the reasons set forth above, we find that LeFever's following claims of ineffective assistance of trial counsel fail: (a) failure to object to jurisdiction based on Attorney General's alleged lack of authority to prosecute the case, (b) failure to request a verbatim record of voir dire, (c) failure to request a choice of lesser harm jury instruction, (e) failure to properly address exhibit 56, (f) failure to preserve the issue of an illegal search and seizure, and (i) cumulative error. We find the record is insufficient on direct appeal to decide the remaining three claims: (d) failure to

file a motion for change of venue, (g) failure to provide civilian clothing, and (h) abandonment at trial.

## VI. CONCLUSION

Finding no plain error committed by the district court, we affirm LeFever's convictions.

AFFIRMED.