IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. VANNIER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAMESON D. VANNIER, APPELLANT.

Filed May 26, 2026.    No. A-25-487.

Appeal from the District Court for Buffalo County: PATRICK M. LEE, Judge. Affirmed.

Charles D. Brewster, of Klein, Brewster, Brandt & Messersmith, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

After a jury trial, Jameson D. Vannier (Vannier) was convicted of two counts of third degree sexual assault of a child. The Buffalo County District Court sentenced Vannier to consecutive terms of 24 months' incarceration on each count, followed by concurrent terms of 18 months' post-release supervision. Vannier appeals, challenging the district court's decision not to allow his wife, Kerry Vannier (Kerry), to testify because he had not disclosed her as a witness pursuant to the reciprocal discovery order. Vannier also claims the court should have imposed an indeterminate sentence that did not include a period of post-release supervision. Finally, Vannier claims that his trial counsel was ineffective in various ways. We affirm.

## II. BACKGROUND

On June 17, 2024, the State filed an information charging Vannier with two counts of third degree sexual assault of a child, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-320.01

(Reissue 2016). Count I was alleged to have occurred on or between August 29, 2015, and May 2, 2017. Count II was alleged to have occurred on or between May 2, 2017, and May 7, 2018. C.O. was the named victim in each count.

Also on June 17, 2024, the district court entered an order granting Vannier's motion for discovery and directed the State to provide him the information to which he was entitled under Neb. Rev. Stat. § 29-1912 (Cum. Supp. 2024), including the names and addresses of witnesses, within 20 days. On July 8, the district court entered an order granting the State's request for reciprocal discovery pursuant to Neb. Rev. Stat. § 29-1916 (Cum. Supp. 2024) and directed Vannier to provide the information within 30 days.

A jury trial was held in March 2025. The State called several witnesses to testify. No exhibits were offered or received into evidence. Vannier did not testify in his own behalf.

C.O. testified that she was born in August 2009 and was currently 15 years old and a freshman in high school. She lived with her grandmother. C.O. stated that Vannier is her "Aunt Kerry's husband," and "Aunt Kerry" is "my grandma's sister." C.O. first met Vannier when she was around "6 or 7 or 8" years old.

C.O. testified about several instances when she was "sexually assaulted" by Vannier. The first time it happened, C.O. was "like, 7 or 8 years old." She was sleeping between Vannier and Kerry at their residence in Kearney, Nebraska. C.O. said, "I had woken up" "in the middle of the night" and "was on the other side of [Vannier]," and "his hands were on me under my shirt, like, in my underwear" and he was touching "[m]y breasts and my vagina." C.O. did not tell anyone about the incident at the time.

Another incident occurred when C.O. was "[m]aybe, like, 10" years old. She and her younger sister were at Vannier and Kerry's house in Gibbon, Nebraska. "We were sitting on the couch and he would just touch me," "he would grab my breasts and he would, like, put his arm around me sometimes and just, like, you know, like, little touches." She said, "It would go from being on top of my shirt to, he would slip his hand into my shirt." "Aunt Kerry" was not in the house when it happened. C.O. did not tell anyone about the incident at the time.

C.O. also recalled "two times" that Vannier touched her at her house in Wood River, Nebraska, when she was 10, 11, or 12 years old. "[O]ne of the times," C.O. was home alone with Vannier and her sister and "he just slipped his hand, like, under my collar of my shirt and would just, like, put his hand on my breast." "The second time it happened, I had just gone inside and he was also inside and he had walked up to me and he grabbed my breasts and he was like, Wow, like, you are growing up and, like, so are these." C.O. said that was the last time something happened with Vannier.

C.O. eventually told her best friend, then her friend's mother, and then C.O.'s "Aunt Chelsea" about what had happened with Vannier. Chelsea took her to be interviewed about what had happened, and the interview occurred when C.O. was "like, 12 or 13 years old."

Chelsea P. is C.O.'s aunt. Chelsea testified that Vannier is married to her aunt (her mother's sister). In August 2022, C.O. told Chelsea what had happened with Vannier, "the inappropriate touching." Chelsea said that C.O. was "reluctant to report it" because "[s]he was scared[,] and she was afraid that she was going to ruin the relationship that my mom and her sister had." However, Chelsea explained to C.O. "the importance of reporting it and protecting herself and anybody that

this could potentially happen to in the future." On August 5, Chelsea and C.O. contacted law enforcement, and C.O. was subsequently interviewed at the child advocacy center.

Cassie Hennings conducted the forensic interview of C.O. at the child advocacy center on August 15, 2022. Hennings confirmed that during the interview C.O. disclosed having been sexually assaulted by Vannier multiple times. Hennings stated, "I believe she said it happened three different times in three different locations." Nothing in C.O.'s interview made Hennings believe that she was not credible.

Kara Hutchinson, a criminal investigator with the Nebraska State Patrol, testified that she observed C.O.'s forensic interview at the child advocacy center. Hutchinson confirmed that C.O.'s testimony at trial was consistent with what she said during her interview. After Hutchinson called and left multiple voice mails for Vannier, she "called his wife and briefly spoke to her, saying I would like to speak to [him] and still never heard anything." Hutchinson went to a court hearing on a separate matter and asked Vannier to come in for an interview. When she interviewed Vannier, he denied the allegations against him.

Kathryn Welty, an investigator with the Buffalo County Sheriff's Office, testified that she also watched C.O.'s forensic interview at the child advocacy center. During the investigation in this case, Welty was able to determine that Vannier lived in Kearney in 2015, 2016, and part of 2017, and he lived in Gibbon from May 2, 2017, to May 7, 2018. Both locations are in Buffalo County, Nebraska. Welty also testified that Vannier was born in May 1972.

After the State rested its case, a brief conference was held outside the presence of the jury. Vannier's counsel informed the district court they intended to call Vannier's wife, Kerry, as a witness "to rebut some of the State's direct case." The State objected, stating, "I don't believe that that Nebraska court system provides for defense to provide rebuttal evidence." The State argued that if Kerry was allowed to testify "that would be the defendant's case in chief," but she was not listed as a potential witness. The State said it "was not informed of the possibility of her testifying until 8 a.m. this morning," and had the State been aware that Kerry was going to testify, it would have moved to depose her "since she was not fully interviewed by law enforcement at the time of the investigation." Vannier's counsel said that Kerry "was mentioned by the State's witnesses," and "[w]e would only be calling her for the specific intent of refuting what was stated by [C.O.] regarding the night [C.O.] says that she slept in a bed with the Vanniers, as to whether or not that occurred"--more properly, the evidence would "impeach the credibility of what was alleged to occur." The State argued that "this is the same evidence that was provided in discovery to defense, the defense was aware of this," and Vannier needed to have informed the State he planned to call Kerry for purposes of impeachment. Vannier then made an offer of proof by calling Kerry to the stand; outside the presence of the jury, Kerry testified that C.O. did not spend the night with her and Vannier when they lived in Kearney or Gibbon. Defense counsel stated that "it was not malicious intent to not notify the [State], it was an oversight," and "it would unduly prejudice [Vannier] not to be able to have the jury hear this evidence." The district court then sustained the State's objection to the witness because there was no showing that C.O.'s testimony was a surprise to Vannier or something that could not have been anticipated, nor was there any claim that the proffered witness' testimony was newly discovered; therefore, the witness should have been disclosed.

The defense rested without presenting evidence.

- 3 -

After deliberation, the jury unanimously found Vannier guilty of both counts of third degree sexual assault of a child. The district court entered judgment on the verdict.

At the sentencing hearing on May 29, 2025, and in its written order, the district court sentenced Vannier to consecutive terms of 24 months' incarceration on each count, followed by concurrent terms of 18 months' post-release supervision. Vannier was also subject to the registration requirements of the Nebraska Sex Offender Registration Act.

Vannier appeals.

## III. ASSIGNMENTS OF ERROR

Vannier assigns that the district court erred by (1) ruling that his wife could not testify for the defense, (2) not allowing him to put on a defense, and (3) sentencing him to two determinate sentences followed by post-release supervision. Vannier also assigns (4) that he received ineffective assistance of counsel when his trial counsel (a) failed to comply with the reciprocal discovery order, (b) failed to inform the district court that the State was, or should have been, aware that his wife was a potential witness for the defense, and (c) "failed to file a Motion for New Trial where errors of the trial court could have resulted in a new trial where he could have presented a defense."

## IV. STANDARD OF REVIEW

Trial courts have broad discretion with respect to sanctions involving discovery procedures, and their rulings thereon will not be reversed in the absence of an abuse of discretion. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court. *State v. Leatherwood*, 320 Neb. 242, 26 N.W.3d 752 (2025).

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCLUSION OF WITNESS

Vannier argues that the district court abused its discretion by ruling that his wife could not testify for the defense. He also argues that the court's ruling violated his constitutional right to present a defense.

As noted previously, the district court entered a discovery order on June 17, 2024, directing the State to provide Vannier with the information to which he was entitled, including the names and addresses of witnesses, within 20 days. On July 8, the court entered an order for reciprocal discovery, directing Vannier to provide the information to the State within 30 days. At trial in March 2025, Vannier's attorney stated he intended to call Kerry to rebut or impeach C.O.'s testimony about what happened the night she spent the night with the Vanniers. The State said it "was not informed of the possibility of [Kerry] testifying until 8 a.m. this morning" (trial started

at 9:05 a.m.), and had it been aware that Kerry was going to testify, it would have moved to depose her "since she was not fully interviewed by law enforcement at the time of the investigation." The court sustained the State's objection to the witness because there was no showing that C.O.'s testimony was a surprise to Vannier or something that could not have been anticipated, nor was there any claim that the proffered witness' testimony was newly discovered; therefore, the witness should have been disclosed.

Section 29-1912 describes the types of information that are discoverable, including the names and addresses of witnesses. Section 29-1916 provides the court discretion to grant reciprocal discovery. Neb. Rev. Stat. § 29-1919 (Cum. Supp. 2024) specifies that when a party has failed to comply with the discovery statutes, the court may (1) order such party to permit the discovery or inspection of materials not previously disclosed, (2) grant a continuance, (3) prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or (4) enter such other order as it deems just under the circumstances. See *State v. Sierra, supra*.

In *Sierra*, the district court granted the State's motion in limine to preclude undisclosed witnesses, alibi defense, and undisclosed exhibits because Sierra had not timely complied with disclosure and notice deadlines. As a result, Sierra was only able to call one of the five listed witnesses and was precluded from pursuing his alibi defense. On appeal, Sierra claimed, in relevant part, that the court erred by granting the State's motion in limine, but the Nebraska Supreme Court found the ruling was not an abuse of discretion.

The Supreme Court noted that at the hearing on the motion in limine, Sierra's attorney's only stated reason for not complying with the reciprocal discovery order was that the individuals the defense intended to call were named in the State's reports and one was also included in the witness list attached to the State's information filed in the matter. In distinguishing a case relied on by Sierra that he believed relieved him of the burden to disclose witnesses, the Supreme Court noted that in the relied upon case, it held that Neb. Rev. Stat. § 29-1927 (Reissue 2016) (evidence of alibi, notice of intent) does not require disclosure of alibi witnesses and that § 29-1916 (reciprocal discovery) applies only when the defendant requests comparable items or information from the State. However, Sierra conceded that at least two of the witnesses excluded by the State's motion in limine were intended to offer evidence impeaching his accomplice's testimony and not an alibi defense. The Supreme Court stated that the district court considered Sierra's attorney's failure to comply with the discovery order and applied an authorized remedy under § 29-1919.

In the present case, the district court prohibited Vannier from calling Kerry as a witness because she had not been disclosed pursuant to the court's reciprocal discovery order. Under the plain meaning of § 29-1919, if a party fails to comply with discovery and give notice of an intent to call a witness, the court may prohibit that witness from being called. *State v. Sierra, supra*. See, also, *State v. Hinn*, 229 Neb. 556, 427 N.W.2d 791 (1988) (at trial defendant attempted to call witness whose name did not appear on pretrial witness list, contending that rebuttal witness need not appear on the list; Supreme Court stated that defendant, having requested list of State's witnesses, was bound by reciprocal requirement of § 29-1916, and defendant's failure to comply authorized court to prohibit defendant from calling unlisted witness). We find that the court did not abuse its discretion in applying an authorized remedy under § 29-1919 when it did not allow Vannier to call Kerry as a witness.

- 5 -

Vannier also argues that the district court's ruling violated his constitutional right to present a defense. The Nebraska Supreme Court rejected a similar argument in *State v. Sierra, supra*. In addressing Sierra's contention that the district court's order granting the State's motion in limine violated his constitutional right under the Sixth Amendment to have process to compel the attendance of witnesses on his behalf, the Supreme Court stated:

> The U.S. Supreme Court has established that the Sixth Amendment does not provide an absolute right to call witnesses; rather, the defendant's right is weighed against the concerns of the state to have a fair and efficient administration of justice. We have considered the same concerns when determining whether other discovery sanctions violate the Nebraska Constitution. Sierra does not have an absolute right to present witnesses and evidence. The State's interest in protecting itself against an 11th-hour defense is merely one component of the broader public interest in a full and truthful disclosure of critical facts.

> We find that the trial court did not abuse its discretion in granting the State's motion in limine. Further, we conclude that the court's ruling granting the State's motion in limine did not violate Sierra's constitutional rights under the Sixth Amendment.

*State v. Sierra*, 305 Neb. at 262-63, 939 N.W.2d at 823. Similarly, we determine the district court did not violate Vannier's constitutional rights by prohibiting him from calling his wife as a witness.

2. SENTENCING

Vannier was convicted of two counts of third degree sexual assault of a child, a Class IIIA felony. The charged offense in count I was alleged to have occurred on or between August 29, 2015, and May 2, 2017. The charged offense in count II was alleged to have occurred on or between May 2, 2017, and May 7, 2018.

Class IIIA felonies are punishable by up to 3 years' imprisonment and 18 months' post-release supervision, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Reissue 2016 & Cum. Supp. 2024). Pursuant to Neb. Rev. Stat. § 29-2204.02(1) (Reissue 2016), the district court is required to impose a determinate sentence of imprisonment and a sentence of post-release supervision for a Class IIIA felony, except as otherwise provided in § 29-2204.02(4). Section 29-2204.02(4) states:

> For any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with (a) a sentence for a Class III, IIIA, or IV felony for *an offense committed prior to August 30, 2015*, or (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision, in accordance with the process set forth in section 29-2204.

(Emphasis supplied.)

Vannier claims that "[b]y virtue of the terms of § 29-2204.02(4), the sentencing court should have imposed an indeterminate sentence that does not include a period of post-release

supervision" because "the earliest date of the alleged offense in Count I is prior to the August 30th, 2015 date" set forth in the statute. Brief for appellant at 13.

The charged offense in count I did straddle the August 30, 2015, date in § 29-2204.02(4)(a) by 1 day, to August 29. However, C.O.'s testimony about Vannier's assaults did not cover dates prior to August 30. The evidence at trial was that Vannier lived in Kearney in 2015, 2016, and part of 2017, and he lived in Gibbon from May 2, 2017, to May 7, 2018. C.O. testified that the assault in Kearney happened when she was 7 or 8 years old. Because C.O. did not turn 7 years old until August 2016, the assault necessarily occurred on or after August 30, 2015.

Because both offenses occurred on or after August 30, 2015, § 29-2204.02(4) is not applicable, and the district court correctly imposed determinate sentences of imprisonment and a sentence of post-release supervision. See *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (finding no plain error in determinate sentence; by its terms, § 29-2204.02(4) applies to a Class IIIA felony for offense committed on or after August 30, 2015; charged offense straddled August 30, 2015, victim's testimony about assaults could cover dates both before and after August 30, and jury did not make any specific finding as to when crime occurred).

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Vannier has new counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

Once such issues are properly raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* This is because the trial record reviewed on appeal is generally """"devoted to issues of guilt or innocence"""" and does not usually address issues of counsel's performance. *Id.* at 263, 939 N.W.2d at 823. The determining factor is whether the record is sufficient to adequately review the question. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Sierra, supra.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Clark, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A

court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id.*

Vannier claims that he received ineffective assistance of counsel when his trial counsel (1) failed to comply with the reciprocal discovery order, (2) failed to inform the district court that the State was, or should have been, aware that Vannier's wife was a potential witness for the defense, and (3) "failed to file a Motion for New Trial where errors of the trial court could have resulted in a new trial where he could have presented a defense." Brief for appellant at 8.

### (a) Failure to Comply With Reciprocal Discovery Order

Vannier claims that his trial counsel was ineffective when counsel failed to comply with the reciprocal discovery order that required him to name any witnesses he intended to call as a defense witness. He argues that, as evidenced by the offer of proof, Kerry "was a witness who could contradict the testimony of the victim C.O. and refute her claims." *Id.* at 9. C.O.'s testimony was the only evidence offered by the State that Vannier committed the crimes, and "[t]he jurors in this matter could have very easily believed the testimony of Kerry Vannier and found that the State failed to prove its charges beyond a reasonable doubt." *Id.* at 10.

We find that the record on direct appeal is insufficient to address Vannier's claim that his trial counsel was ineffective for failing to comply with the reciprocal discovery order. Further inquiry is needed to determine whether trial counsel had legitimate and strategic reasons for not disclosing Kerry as a witness. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Sierra, supra.* This allegation of ineffective assistance of trial counsel is preserved for postconviction review.

### (b) Failure to Inform Court That State Was Aware of Witness

Vannier claims that his trial counsel was ineffective when counsel failed to inform the district court that the State was, or should have been, aware that his wife was a potential witness for the defense. He argues that trial counsel "failed to point out to the court that in the State's Information . . . the section listing the State's witnesses states 'including all defense witnesses and any additional witnesses mentioned in the reports,'" and "Kerry Vannier's name was mentioned or referred to 25 times in police reports that detailed the investigation of the alleged crimes in the State's Information." Brief for appellant at 9.

We conclude that Vannier cannot show he was prejudiced by trial counsel's failure to inform the district court that the State should have been aware that his wife was a potential witness for the defense. As noted previously, in *State v. Sierra, supra*, at the hearing on the State's motion in limine to preclude undisclosed witnesses, Sierra's attorney's only stated reason for not complying with the reciprocal discovery order was that the individuals the defense intended to call were named in the State's reports and one was also included in the witness list attached to the State's information filed in the matter. The Nebraska Supreme Court stated that the district court considered Sierra's attorney's failure to comply with the discovery order and applied an authorized remedy under § 29-1919, and it found that the district court did not abuse its discretion in granting the motion in limine. Thus, even if Vannier's trial attorney would have informed the district court that the State should have been aware that his wife was a potential witness for the defense, the

district court would have been allowed to prohibit her from testifying under § 29-1919. Because Vannier cannot show prejudice, this claim of ineffective assistance of counsel fails.

### (c) Failure to File Motion for New Trial

Vannier claims that his trial counsel was ineffective because counsel "failed to file a Motion for New Trial where errors of the trial court could have resulted in a new trial where he could have presented a defense." Brief for appellant at 8. We find that this claim of ineffective assistance of counsel was not assigned with sufficient particularly as it does not address what "errors of the trial court" should have been raised in the motion for new trial. See *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026) (allegation sufficiently specific when it addresses specific issue that does not require additional information to understand precisely what assignment attacks).

Regardless, in the argument section of his brief, Vannier claims that in a motion for new trial his trial counsel "could have pointed out that Kerry Vannier would have qualified as a witness for the defense in that she was named in the police reports held by the prosecutor, and that it was error prejudicial to [Vannier] for the court to rule that Kerry Vannier could not testify for the defense." Brief for appellant at 9. We have already determined that the district court did not abuse its discretion in applying an authorized remedy under § 29-1919 when it did not allow Vannier to call Kerry as a witness. We also determined that the court did not violate Vannier's constitutional rights by prohibiting him from calling his wife as a witness. Accordingly, Vannier's ineffective assistance of counsel claim regarding counsel's failure to file a motion for new trial on this "error" by the trial court fails.

### VI. CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion when it did not allow Vannier's wife to testify as a witness for the defense and we find no error in the court's sentencing of Vannier. Vannier's claim that trial counsel was ineffective for failing to comply with the reciprocal discovery order is preserved for postconviction review, but his remaining claims of ineffective assistance of counsel fail.

AFFIRMED.